George W. Riggs *et al.*

*v.*

Stephen A. D. Girard *et al.*

*Filed at Springfield June 12, 1890.*

1. Limitations—*act of 1839—color of title.* A sheriff's deed for land on a sale for taxes, and a deed from the sheriff's grantee purporting to convey, is good color of title under the Limitation law of 1839.

2. Same—*possession under act of 1839—by whom—as, by a tenant—or the widow.* To create the bar of section 1 of the Limitation act of 1839, it is not necessary that the person claiming the land shall actually reside on it or cultivate it. The requisite possession may be shown in different ways, and that by a tenant is enough. The possession of a tenant, or one in the position of a tenant, will inure to the benefit of the holder of the color of title.

3. A party holding color of title took possession of the land in the spring of 1863, and died in December following, leaving a widow and children. His widow continued to hold possession from her husband's death to January, 1884, and paid all taxes on the land from 1874 to 1883, inclusive, and after the widow's death the heirs paid the taxes: *Held,* that the widow's possession and payment of the taxes inured to the benefit of the heirs, and constituted a bar to an action by the holder of the former paramount title.

4. Descents—*as to color of title.* Upon the death of the holder of color of title to land in possession thereof, his title descends to his children as tenants in common, and they will take a present vested interest, subject to the rights of the widow in the premises.

5. Dower—*before assignment—character of the right.* Until dower is assigned, the widow does not become seized of an estate of dower in

land. All she has is a right, resting only in action, to have her dower assigned, and she does not become the tenant of the heirs.

6. SAME—*widow's quarantine—right of possession under former statute—not adverse to the heirs.* Under a former statute, known as the "Widow's Quarantine law," in force in 1863, the widow was vested with a right of possession to the home farm, a position analogous to that of a tenant of the heirs, free from molestation and rent. Her right of possession was defeasible upon the assignment of dower, but when it was not assigned the right of possession continued for her life.

7. A widow's possession under the statute which gave her the right to retain the full possession of the dwelling house in which her husband most usually dwelt next before his death, with the out-houses and plantation thereto belonging, free from rent, until her dower should be assigned, was not adverse to the title of the heirs, but was entirely consistent and in harmony with such title.

APPEAL from the Circuit Court of Fulton county; the Hon. JOHN C. BAGBY, Judge, presiding.

Mr. JAMES C. CONKLING, for the appellants:

A widow has a right to retain possession of the entire homestead premises until her dower is assigned, unless transferred, lost, or forfeited by her own acts. Dower act of 1845, sec. 27; *Doane* v. *Walker*, 101 Ill. 635; *Trask* v. *Baxter*, 48 id. 407; *Strawn* v. *Strawn's Heirs*, 50 id. 257.

The widow had a right to the exclusive possession, and to lease and receive the rents. The possession of her tenants (or family) was her possession. *Clark* v. *Burnside*, 15 Ill. 63.

If the heirs had obtained possession without her consent, she could have maintained ejectment against them. *Wolf* v. *Wolf*, 67 Ill. 56.

It is the duty of a party in possession, though wrongfully, to make reasonable repairs and pay the taxes. *Doane* v. *Walker*, 101 Ill. 642.

If a widow receives all the rents she must pay all the taxes. *Strawn* v. *Strawn*, 50 Ill. 263.

A tenant for life is bound to keep down the taxes. *Peck* v. *Sherwood*, 56 N. Y. 615; *Prettyman* v. *Walston*, 34 Ill. 192; *Carter* v. *Youngs*, 42 N. Y. 422; *Owen* v. *Peacock*, 38 Ill. 37.

The defendants rely upon section 6 of the Statute of Limitations for a defense. But color of title, possession and payment of taxes for seven successive years, must all concur before the statute will begin to run. *Heacock* v. *Lubuke*, 107 Ill. 403; *Clark* v. *Lyon*, 45 id. 391; *Wettig* v. *Bowman*, 47 id. 19.

In this case, the possession of defendants did not commence until the death of their mother, in January, 1884, and they did not begin to pay taxes in their own right until the spring of 1884. The bar was not therefore complete before this action was brought.

Neither can defendants maintain their defense under section 4 of the Statute of Limitations, concerning seven years' residence under a connected title deducible of record. They produced a sheriff's deed for taxes as the foundation of their title, but they did not show the authority of the sheriff to sell. They should have produced the judgment and precept, to make out a title deducible of record. *Hinman* v. *Pope*, 1 Gilm. 131; *Atkins* v. *Hinman*, 2 id. 437; *Elston* v. *Kennicott*, 46 Ill. 196.

But defendants did not have such a residence as is contemplated by law. The residence was that of Mrs. Girard, their mother, until her death, in 1884. Until then, her possession or residence was exclusively her own, and for her own benefit. During her estate for life her residence could not be their residence, under this statute. *Martin* v. *Judd*, 81 Ill. 488; *Clark* v. *Burnside*, 15 id. 63.

The intent of the framers of this act in requiring possession by actual residence, was to require such a possession as could afford to the holder of an adverse title the best notice. It must be an open and notorious possession. *Martin* v. *Judd*, 81 Ill. 492.

No suit could have been maintained by Riggs against the heirs before their mother's death. Therefore the statute did not commence to run in their favor, against Riggs, until he had a right to enter. *Higgins* v. *Crosby*, 40 Ill. 262.

Mr. Frederick M. Grant, and Mr. John S. Winter, for the appellees:

It is true, that under the act in force at the death of Corbley M. Girard, his widow could lawfully retain possession of the dwelling house on the land, and in which they resided, with the out-houses and plantation thereto belonging, free from molestation and rent, until her dower was assigned. But that possession was in subordination to her husband's title thereto, and in succession to the same; and while she was entitled to all the rents and profits arising from the land, still she held that possession in trust for the use in remainder of the heirs of her husband. The possession of a widow to whom no dower has been assigned, is not adverse to the heirs.

Twenty years' possession makes the bar complete, though not begun or maintained under color of title. *Dexter* v. *Tree,* 117 Ill. 532; *Flaherty* v. *McCormick,* 113 id. 538; *Lavalle* v. *Strobel,* 89 id. 370; *Kerr* v. *Hitt,* 75 id. 51.

The residence required in making out the bar, can be by a tenant as well as by the holder of the title of record. *Martin* v. *Judd,* 81 Ill. 488.

The section of our statute under consideration is copied almost literally from the act of 1809 of the Kentucky legislature, and has been construed by the Court of Appeals of that State by many well considered opinions, and its construction settled there before it was adopted by the legislature of this State. *White* v. *Bates,* 7 J. J. Marsh. 542; *Bradley* v. *Cahill,* 3 A. K. Marsh. 615; *Anderson* v. *Turner,* id. 134.

Mr. Justice Baker delivered the opinion of the Court:

This was ejectment, brought in the circuit court of Fulton county, to recover possession of the east half of the north-east quarter of section 11, township 6 north, range 5, east of the fourth principal meridian. The plaintiffs below, who are appellants here, were George W. Riggs, Mary T. Riggs and Law-

rason Riggs, trustees under the last will and testament of Lawrason Riggs, deceased, and the defendants below, who are appellees here, were Stephen A. D. Girard and Mary Romine. An issue formed upon the plea of not guilty was submitted to the court without a jury, and the finding and judgment were for the defendants.

At the trial the plaintiffs introduced in evidence a patent for the land from the United States to Lawrason Riggs, dated the 10th day of November, 1840; also, proof of the death of said Riggs on the 13th day of October, 1884; and also the will of said Riggs, duly probated, whereby he devised all of his real estate to the plaintiffs. The defendants produced in evidence a deed for the premises from the sheriff of Fulton county to James Q. Palmer, dated September 18, 1857, and filed for record January 22, 1858, and purporting to be based upon a judgment for the taxes of 1854, rendered at the May term, 1855, of the county court of Fulton county, and also a quit-claim deed for the premises from said Palmer and wife to Corbley M. Girard, dated March 10, 1862, and filed for record January 9, 1863.

It was proven by the defendants that Corbley M. Girard moved upon the land, with his family, in the spring of 1863, and resided there until his death, in December of that year; that at that time most of the land was under fence, and there was a dwelling house situate thereon; that thereafter, Jane Girard, the widow of said Corbley M., continued to reside there, with the children of herself and her deceased husband, until her death, in January, 1884, and that her widow's dower was never assigned. It also appeared that Corbley M. Girard left him surviving seven children, two of whom died in infancy, and childless; that two of the remaining children, Edith Seigler and Amanda J. Feidler, together with their husbands, conveyed, in 1884, their interests in the land to Stephen A. D. Girard, one of the appellees, and the other, Bettie Waterhouse, transferred her interest to the appellee Mary Romine, and

that since the death of Jane Girard, the widow, appellees have been in possession of the land. The said Jane Girard paid, out of moneys made off of the land, all the taxes assessed thereon from 1874 to 1883, both inclusive, and since her death appellees have paid all the taxes.

The question arises whether or not appellees established a bar to the suit of appellants by bringing themselves within the provisions of the first section of the Limitation law of 1839. (Starr & Curtis' Ann. Stat. chap. 83, sec. 6.) The substance of that section is, that any person in the actual possession of lands or tenements, under claim and color of title made in good faith, and who shall, for seven successive years, continue in such possession, and shall also, during that time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements to the extent and according to the purport of his or her paper title; and that all persons holding under such possession, by purchase, devise or descent, before the seven years have expired, and who continue such possession, and continue to pay the taxes, so as to complete the possession and payment of taxes for the term of seven years, are entitled to the benefit of the section.

It must be admitted that the deeds from the sheriff of Fulton county to Palmer, and from Palmer to Corbley M. Girard, constituted claim and color of title, made in good faith, within the purview of the statute. Whatever rights or interests either Jane Girard, the widow, or the children and heirs of Corbley M. Girard, deceased, took in respect to this land, they were alike connected with and dependent upon the title or color of title which the deceased purchased from Palmer. Immediately upon the death of Corbley M. Girard, in 1863, his title descended to his children as tenants in common, and the interest taken by them was a present vested interest, of which they were seized in fee. Dower was never assigned to Jane Girard, and she therefore never became seized of an estate of dower in the

land. All that she had was a right, which rested only in action, to have her dower assigned, and the temporary defeasible right, under the statute then in force, to her widow's quarantine. This latter right was given by section 27 of the Dower act, (1 Gross' Stat. chap. 34,) which reads as follows: "The widow may, in all cases, retain the full possession of the dwelling house in which her husband most usually dwelt next before his death, together with the out-houses and plantation thereto belonging, free from molestation and rent, until her dower be assigned." Her dower never having been assigned, Jane Girard never became the tenant in dower of the heirs. She was, however, by the statute, invested with a right of possession, which placed her in a position analogous to that of a tenant of the heirs, free from molestation and rent. Her right of possession was defeasible upon the assignment of dower, but since, in her case, dower never was assigned, it continued for the term of her natural life. Her possession, under this statutory right, of the dwelling house and land was not adverse to the title of the heirs, but was entirely consistent and in harmony with such title. *Musham* v. *Musham,* 87 Ill. 80; *Mettler* v. *Miller,* 129 id. 630.

In *Williams* v. *Ballance,* 23 Ill. 193, and *Martin* v. *Judd,* 81 id. 488, this court construed the words "actual residence," as used in the Limitation law of 1835, and it was held that the actual residence required by that act need not be by the owner of the title in person, but that such residence might be by a tenant, or by one in possession under a contract to purchase. In *Kane* v. *Footh,* 70 Ill. 587, the court held that it was not necessary, in order to create the bar of section 1 of the Limitation law of 1839, that the person claiming the land should actually reside on it or cultivate it,—that the requisite possession might be shown in different modes, and that possession by a tenant was enough.

It is clear, both from reason and from these authorities, that the possession of a tenant must be held to inure to the benefit

40—133 ILL.

of the holder of the title. Jane Girard was lawfully in actual possession, under the title which descended to the heirs, and such possession was analogous to and substantially that of their tenant, and was, in contemplation of law, the possession of the heirs. The fact that so long as her dower was unassigned she had a right to the exclusive occupancy and control of the land, and to lease it and receive the rents, and to maintain ejectment against the heirs in the event they had obtained possession without her consent, is wholly immaterial. Her case does not stand otherwise in these respects than it would had she been the tenant of the heirs under an ordinary lease for years. In this latter case she would have had the right to exclusive possession, and, unless prevented by the terms of the contract, the privilege of leasing and collecting rents, and the right to recover in ejectment against the heirs, in the event they wrongfully got possession.

It is claimed, that as the widow paid the taxes in her own name, and was compelled to pay them in order to protect her own possession, such payments can not be regarded as having been made for the heirs, and can not inure to their benefit. We are not inclined to adopt this view. She was lawfully in possession under her widow's quarantine, and her occupancy was connected with, based upon, and in subordination to, the title which had been vested in her husband, and that title had descended to his heirs-at-law, but charged with the burden of her dower and quarantine rights. Being in possession under her quarantine, she was entitled to receive, and did receive, all the rents and profits, and it was therefore required of her that she should pay all the taxes. (*Strawn* v. *Strawn's Heirs*, 50 Ill. 256.) A failure to pay the taxes would have resulted not only in a loss of her possession, but in a divestiture of the title of the owners of the fee. The legal duty was imposed upon her to protect the title of the heirs by keeping down the taxes, and if she had neglected and refused to perform that duty, the law would have afforded relief to such heirs. And manifestly,

in case of a failure on her part to make payment of the taxes, she would not have been permitted to purchase the land at the tax sale, and acquire a tax title thereto which she could enforce against the heirs. She paid the taxes under the title which had been held by her husband, and which the law, at his death, had cast upon his children, and such payments must be held to have inured to the benefit of the holders of that title, and to have been their payments.

If we are correct in the conclusions we have thus far stated, it is clear, without any further discussion of the testimony, that appellees established at the trial a complete bar, under what is now the sixth section of the Limitation law, to the paramount title exhibited by appellants.

The view we have taken of the case obviates the necessity of any discussion of the questions raised in respect to the twenty years' Limitation law and the Limitation law of 1835.

The circuit court properly found the issues for appellees, and the judgment is affirmed.

*Judgment affirmed.*