Theodore Horn *et al.* Plaintiffs in Error, *vs.* Edward
Metzger *et al.* Defendants in Error.

*Opinion filed April 23, 1908—Rehearing denied June 3, 1908.*

1. Judgments and decrees—*fact that court of general jurisdic-
tion renders decree raises presumption of jurisdiction.* The fact
that a court of general jurisdiction renders a decree raises a pre-
sumption, as against collateral attack, that it had jurisdiction both
as to the subject matter and the parties, even though the decree
contains no recital of notice to the defendants, by service of process
or otherwise.

2. Same—*nothing presumed to be out of jurisdiction of court of
general jurisdiction.* Nothing is presumed to be out of the juris-
diction of a court of general jurisdiction except that which specially
appears to be so, and where the record of a judgment or decree of
such a court is attacked or relied upon in a collateral proceeding
jurisdiction must be presumed, although it is not alleged and does
not appear of record.

3. Same—*when it will be presumed that summons was issued
and served.* Where a bill is filed at a certain term but owing to its
mutilation does not show to what term summons was made return-
able, if the decree in the case recites that an answer was filed by
the guardian *ad litem* and the cause heard upon the bill, answer,
replication and evidence heard by the court, it will be presumed,
on collateral attack, that a summons was issued and served in time
to give the court jurisdiction to hear and determine the cause, un-
less such presumption is contradicted by the record.

4. Same—*original draft of decree is no part of the record.* The
original draft of a decree in chancery is no part of the record, and
it is the decree actually entered of record which must be regarded
as the decree pronounced by the court; nor can such record be
called in question by reference to a collateral matter or to a paper
not a part of the record.

5. Limitations—*adverse possession cannot be made out by in-
ference or implication.* The doctrine of adverse possession is to be
taken strictly, and, as the presumptions are all in favor of the true
owner, the proof to establish adverse possession must be clear, pos-
itive and unequivocal.

6. Same—*when decree and master's deed are not color of title.*
A chancery decree and master's deed, which purport to convey to
the complainant only the interest of the defendants which they had
inherited from their mother and which was the only interest sought
to be recovered by the bill, do not transfer, nor constitute color of

title to, an interest in the same property which the defendants had previously inherited from another source.

7. SAME—*exclusive possession of wife's land by husband is not necessarily adverse to children.* Exclusive possession of a wife's lands by her husband, as her agent, does not become adverse to the minor children by the mere fact of the wife's death, even though the husband thereafter continues his possession under a claim of absolute ownership.

WRIT OF ERROR to the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding.

The plaintiffs in error, Theodore Horn and Ernst Horn, brought ejectment against Edward Metzger and others to recover possession of lot 8, block 175, of the platted town (now city) of East St. Louis. The common source of title was Emanuel Trotier, the owner of the fee, who conveyed the premises to Gustav Horn and Henry Jackeisch. On March 2, 1877, Gustav Horn conveyed his undivided one-half interest to John Polish, who conveyed the same on May 10, 1879, to Emilie Horn, wife of Gustav Horn. On August 17, 1885, the widow and heirs of Henry Jackeisch conveyed the other half of the premises to Emilie Horn, who died on May 16, 1886, leaving surviving her Gustav Horn, her husband, and nine children, three of whom were triplets six days old, who died shortly after their mother, leaving their father and the other six children as their heirs-at-law, the plaintiffs in error being two of the six children.

On January 9, 1888, Gustav Horn filed his bill in the city court of East St. Louis against his six children, alleging that in 1877, being in poor health and believing he was going to die, he conveyed his undivided one-half interest in the premises, together with all his other lands, without consideration, to his wife, Emilie Horn, with the understanding that in case he recovered she was to re-convey to him; that he subsequently purchased the other half from the Jackeisch heirs, and for the same reason caused the title to be placed in his wife, and that after he recovered his health his wife

frequently requested him to have deeds prepared by which she could re-convey said property to him, but he neglected to do so until her death. The defendants were all minors, and the bill prayed that a guardian *ad litem* might be appointed for them; that their interest in said premises as children and heirs of Emilie Horn, by reason of the deeds aforesaid, might be vested in the complainant, and that the master in chancery be required to make a deed conveying all interest vested in the defendants under said deeds. A decree was entered in accordance with the prayer of the bill, and on May 18, 1888, the master made the deed and it was filed for record.

On the date of the death of Emilie Horn Gustav Horn was in possession of the premises claiming absolute title thereto, and he paid all taxes assessed against them until February 21, 1902, when he conveyed them, by warranty deed, to the defendant in error Edward Metzger, who has since paid all taxes thereon. Gustav Horn died in July, 1906, and after his death the plaintiffs in error, on July 13, 1906, began this action of ejectment. A jury was waived and a trial was had before the court upon an agreed state of facts and evidence heard in open court, resulting in a judgment for the defendants, to reverse which this writ of error is prosecuted.

D. P. BOYLE, (WEBB & CROW, of counsel,) for plaintiffs in error.

KEEFE & SULLIVAN, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The bill of Gustav Horn against his children was filed during the January term of the city court of East St. Louis, which began on January 2. It was not entitled of any term. The bill is mutilated and a part of the prayer for process has been destroyed. No summons appears in the record and

no other paper in the case except the original draft of the decree. It appears that a part of the building in which the records of the court were kept was destroyed in 1896 by a cyclone, in which many of the books and papers of the court were lost. The decree is of record in the chancery record of the court. A term of the court was held beginning on April 16, 1888. The convening order of the January term appears on page 280 of chancery record A, that of the April term on page 289, and the decree is recorded on pages 286 and 287. The decree, as recorded, does not state the term, but is noted as filed May 18, 1888. The draft of the decree is preceded by a caption as of the January term, and is marked filed May 18, 1888.

It is contended that the decree was rendered at the January term and was therefore void, because, the bill having been filed during that term, no summons could have been issued requiring an answer at that term, and the defendants, being minors, could not have given jurisdiction by entering their appearance. The decree contains no recital of notice to the defendants, either by service of process or otherwise; but the city court of East St. Louis is a court of general jurisdiction, and from the fact that it rendered the decree the presumption arises that it had jurisdiction both as to the subject matter and the parties to do so. It is a rule of uniform application in relation to superior courts or courts of general jurisdiction, that nothing is to be presumed to be out of their jurisdiction but that which specially appears to be so. Where the record of a judgment or decree is relied on in a collateral proceeding, jurisdiction must be presumed in favor of a court of general jurisdiction, although it is not alleged and does not appear in the record. (*Swearengen* v. *Gulick,* 67 Ill. 208; *Benefield* v. *Albert,* 132 id. 665; *Nickrans* v. *Wilk,* 161 id. 76; *Cassell* v. *Joseph,* 184 id. 378.) The bill filed during the January term prayed a summons against the defendants. The bill was not entitled of any term, and owing to its mutilation does not show to what

term the summons was to be made returnable. The decree recites that an answer was filed by a guardian *ad litem,* and that the cause was heard upon bill, answer, replication and evidence heard by the court. It will be presumed that a summons was issued and served in time to give the court jurisdiction to hear and determine the cause. Such presumption is entirely consistent with the record if the cause was heard at the April term. It will therefore be presumed that it was heard at that term unless such presumption is contradicted by the record.

It is contended that it is so contradicted by the fact that the original draft of the decree has at its beginning a caption as of the January term, and that the decree appears in the chancery record of the court on a page following the convening order of the January term and preceding the convening order of the April term. Such original draft of the decree is no part of the record. It is the decree actually entered in the record which must be regarded as the decree pronounced by the court. To that record, only, can we look, and it cannot be called in question by a reference to any collateral matter or to a paper not a part of the record. If the record does not correctly show the action of the court it can be corrected only by a direct proceeding for that purpose. Moreover, not only is the decree presumed to have been rendered at the April term because it is not to be presumed that the court would have appointed a guardian *ad litem,* heard the cause and rendered a decree unless it had acquired jurisdiction to do so, but the evidence conclusively shows that it was, in fact, rendered at the April term. Without regard to the particular pages on which the decree is recorded or its consecutive order in relation to the convening orders of the different terms, it could not have been recorded until after the beginning of the April term, for it was not filed until May 18. There was therefore no decree until that date. "The decree is inchoate until it is approved by the chancellor and filed for record or shall be recorded,

which answers to the passing and entering it, in the English court. * * * It is then, and not till then, that it is the decree of the court and is *res adjudicata.* There was, then, no decree of the court until it was approved and filed for record or was recorded, and that was the time the case was decided and the decree was rendered." *Hughs* v. *Washington,* 65 Ill. 245; *Stevens* v. *Coffeen,* 39 id. 148.

The decree and master's deed were therefore effectual to vest in Gustav Horn the title of the defendants to the suit to the extent that they purported to do so,—that is, to the extent that such title vested in them as the heirs of Emilie Horn. Each of the defendants took, as an heir of Emilie Horn, one-ninth of the property in controversy. The remaining three-ninths they took, together with their father, as heirs of the three younger children and not as heirs of Emilie Horn, and the decree did not affect or purport to affect this part of the property. Therefore the decree and the master's deed neither transferred the title to this part of the property nor constituted color of title thereto.

The defendants in error claim the benefit of the twenty years' Statute of Limitations. It was stipulated that Gustav Horn at the death of Emilie Horn was in possession of the premises claiming absolute title thereto. There is nothing to show that there ever was any change in the possession of the premises. It is entirely consistent with the stipulation that Gustav Horn was during his wife's lifetime in the exclusive possession of the premises as her agent, and that upon her death he continued in such exclusive possession, but then claiming absolute ownership. It is not stipulated that he claimed absolute ownership in her lifetime, and a possession as agent, during her lifetime, would not become adverse to his minor children by the mere fact of her death, even though he then claimed absolute ownership. The doctrine of adverse possession is to be taken strictly. It cannot be made out by inference or implication. The presumptions are all in favor of the true owner, and the proof to establish

adverse possession must be strict, clear, positive and un-equivocal. (*Zirngibl* v. *Calumet Dock Co.* 157 Ill. 430.) The possession must be visible, open, exclusive, hostile in its inception and so continue for twenty years. (*McClellan* v. *Kellogg,* 17 Ill. 498; *Turney* v. *Chamberlain,* 15 id. 271.) The exclusive possession by a husband of his wife's lands is not necessarily adverse. There is no proof that Gustav Horn claimed ownership of the premises in his wife's life-time. His possession was not hostile in its inception, and there is nothing to indicate that the character of his pos-session became different after her death.

As to the share of the plaintiffs in error in the one-third interest which descended to the three children who died, the judgment is erroneous. It will therefore be re-versed and the cause will be remanded.

*Reversed and remanded.*