(No. 12165.—Reversed and remanded.)
RUDOLPH THEINER, Appellant, vs. WILLIAM SPECKIN,
Appellee.

*Opinion filed October 27, 1919—Rehearing denied Dec. 5, 1919.*

1. HUSBAND AND WIFE—*a widow who abandons her homestead has only right to have dower assigned.* A widow who has lost her homestead by acquiring a new home has no estate in the homestead property but a mere right to have her dower assigned in the whole premises, and where she retains possession through a tenant her right to have dower assigned continues while possession is so held.

2. SAME—*widow acquires no title by paying off husband's mortgage.* A widow acquires no title to her husband's property by paying off a mortgage with her own money, but such payment is necessary to the preservation of her estate of homestead and the interests of the heirs, and she thereby acquires a lien on the interests of the heirs for their shares of the incumbrance.

3. MORTGAGES—*mortgagee has only a qualified title during existence of debt.* While a mortgage conveys the title as between the mortgagor and mortgagee such title is only a qualified one, as security for the creditor during the existence of the debt, and when the debt is paid both the title and right of possession of the mortgagee are at an end.

4. LIMITATIONS—*when possession of one heir cannot be tacked to possession of widow.* Where a widow abandons her homestead estate but continues in possession through one of the heirs as tenant, such tenant cannot, as against the other heirs, tack his possession onto the widow's after her death, as her rights in the premises pass to all her heirs and not alone to the one who is tenant.

5. SAME—*evidence of adverse possession must be clear and positive.* All presumptions are in favor of the true owner, and to prove adverse possession the evidence must be clear that the possession is hostile, actual, visible and exclusive and that it has been continuous for twenty years or more without any recognition of the title of the true owner.

STONE, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. FREDERICK A. SMITH, Judge, presiding.

WINSTON & LOWY, for appellant.

GEORGE McMAHON, and MANIERRE & PRATT, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellant, Rudolph Theiner, filed on March 2, 1917, an application in the circuit court of Cook county for registration of title under the Torrens system to certain real estate known as No. 4715 Marshfield avenue, Chicago. Appellee, William Speckin, was made party defendant to such application and filed his answer denying that the applicant owned the land in fee simple. He charged that he had been in undisputed, peaceable possession of the land under color of title for more than fifteen years, had paid all taxes, assessments and other charges and that he was therefore the legal and equitable owner thereof, and that his possession had been peaceful, undisputed, open, notorious and adverse to any and all claims. Later he filed an amendment to his answer, setting up the defense of adverse possession of himself and his mother for a period of more than twenty years, and thereby claimed to be the absolute owner of the land under section 1 of the Limitation act. He also set up the defense of the seven year limitation under section 4 of the Limitation act.

The facts disclose that William Krueger acquired title in fee simple to the premises by a deed from Robert Berger dated September 18, 1882. He died one week later, leaving him surviving Emil, a son by a former marriage, and Henry and Otto, sons by his marriage with Ida Speckin Krueger, as his only heirs-at-law, and Ida Speckin Krueger, his widow, who was the mother of appellee by her former marriage. At the time of the father's death Emil Krueger was near twenty-one years of age, Henry and Otto Krueger were of the ages of five and three years, respectively, and appellee was about ten years old. All of them, with the exception of Emil, occupied the premises in question as their

homestead, with their mother, until some time in 1884, when they, with their mother, who had married Edward Dams, moved onto property in Chicago purchased by Dams with money furnished by their mother, the title to which was taken in the name of Dams. After the removal of the family from the premises in question Mrs. Dams rented the same and collected the rent (about $7 per month) until 1899, when appellee married and rented the property from his mother. He remained there as her tenant and paid rent at $4 per month to her until her death, May 7, 1902. Dams died subsequent to her death. Shortly before December, 1882, appellee's mother collected $1500 insurance on the life of her deceased husband, William Krueger, and paid off a mortgage of $200 to Wilhelm Neimann, from whom Krueger had borrowed the money just before his death. The record does not disclose how the mortgage was released by Neimann, but it does disclose that appellant offered in evidence a release of that mortgage to the heirs of Krueger, dated December 4, 1882, and the mortgage dated September 21, 1882, as disclosed by an abstract of title, and that they were marked as parts of an exhibit, but the exhibit does not appear in the record. So far as this record shows, neither the appellee nor his mother ever had any paper title or paper purporting to give title in any way, by way of release or otherwise. The general taxes from 1881 to 1883 were paid by William Krueger and from 1883 to 1902 by Edward Dams for Mrs. Dams. Appellee paid them from 1903 to 1916. He also made some slight repairs on the premises and paid some small special assessments. His mother also paid some small special assessments on the lot. The taxes paid by her would not average over $5 per annum and the taxes paid by appellee would not average over $15 or $16 per annum. The record further discloses that appellant based his claim for a title to the premises upon three quit-claim deeds from Otto, Henry and Emil Krueger, dated, respectively, January 31, February 3 and

February 8, 1917, and the other proof shows that William Krueger died seized in fee of said premises.

The proof in the record does not show that appellee's mother had perfected any title to said premises under any section of the Limitation act, by adverse possession or otherwise. She had no color of title whatever. She had no connected title in law or equity, deducible of record, from the State or the government or from any officer or other person, and consequently she had acquired no title under section 4 of the Limitation act. At the time of her husband's death and until she left the premises, in 1884, she had a homestead estate in the premises. The lot only cost $200, and the value of the premises, with improvements thereon, in 1884 could not have been much in excess of $1000, if any, according to the proof in this record. The actual value does not appear by any testimony. If the premises exceeded $1000 in value she was entitled to dower in the excess. After she had lost her homestead by acquiring a new home she had no estate in the land but a mere right to have her dower assigned in the whole premises. (*Maring* v. *Meeker*, 263 Ill. 136.) She retained possession, however, by tenant, and still had the right to have her dower assigned to the day of her death.

The widow obtained no title to the premises by the mere payment of the mortgage out of her own money. By the payment thereof she would be entitled to a lien on the premises on the interests of the heirs for their shares of the burden. She was compelled also to contribute her ratable share of the incumbrance. While a mortgage conveys the title as between the mortgagor and mortgagee, such title is only a qualified one, as security to the creditor during the existence of the debt. When the debt is paid both the title and right of possession of the mortgagee are at an end. (*Lightcap* v. *Bradley*, 186 Ill. 510.) If a quitclaim deed had been made by Neimann, the mortgagee, direct to the widow she could not have relied upon it as color

of title, as in this case it would have only been for the purpose of releasing the mortgage. (*Willhite* v. *Berry*, 232 Ill. 331.) The evidence shows that she was not buying the mortgage or buying the mortgagee's interest in the land but that she paid off the mortgage. The payment of the mortgage was necessary to the preservation of her estate of homestead as well as of the interests of the heirs of the mortgagor, and therefore such payment only gave her a lien on their interests for their shares of the burden. *Jones* v. *Gilbert*, 135 Ill. 27.

The widow was a life tenant of the premises until she lost her homestead by the acquiring of another in 1884. As a life tenant she did not hold adversely to the heirs while in possession. (*Cassem* v. *Prindle*, 258 Ill. 13.) She was only in possession by tenant about eighteen years after she lost her homestead, and could not obtain title by adverse possession in that time even if she held adversely to the heirs. It is not claimed by appellee that she held adversely to the heirs until after she had lost her homestead. The real contention of appellee is that the widow held by adverse possession of the premises from the date of her removal from the premises and that he has held the premises by adverse possession since the death of his mother, and that by tacking his adverse possession to her adverse possession he has, since her death, acquired title by such possession. It will not be necessary to consider whether her possession was adverse to the heirs of William Krueger or not, as it is conceded that she did not obtain title by such adverse possession. If she had obtained title in that manner the land would have descended to all of her heirs instead of to the appellee. All the testimony in the record, including that of appellee himself, proves that he was the tenant of the widow and paid her four dollars a month rent up to her death. At her death, then, he was nothing but a tenant of his mother and had no other rights in the premises. She made no will, deed or other written

instrument purporting to will or to convey to him any interest in such property. All his claim to the right to tack her adverse possession to his is based on a conversation which he testified occurred about May 4, 1902, very shortly before her death, between her and his step-father. His testimony in regard to that conversation is as follows: "I don't remember whether it was at the dinner table or the supper table. Mother could not speak at that time and was sitting at the table eating or trying to eat. Dams [his step-father] said, 'You say Willie [appellee] will have the property when you die?' and she nodded and could not speak. She had enlargement of the liver and dropsy and could not speak. She was in that condition four or five days." His testimony shows no verbal gift of the property or of the possession to him. At most it shows that she said it would be his at her death. He still remained her tenant thereafter up to her death, as his testimony positively shows. Property cannot be willed verbally in the manner that appellee claims she was willing or giving it to him. The possession of the property was hers at her death by a tenant, and all her rights and interests in the premises, including the right of possession, passed to her heirs and not to appellee, her tenant. (*Riggs* v. *Girard,* 133 Ill. 619.) She, in fact, had no rights except her rights as a widow, and nothing passed to him by her death as against the heirs of William Krueger. There was no connection of her adverse possession, if she had such possession, with any adverse possession by him. There was no privity of estate or title between them, and consequently he could not tack any claim of adverse possession on his part to that of his mother. (*Rich* v. *Naffziger,* 255 Ill. 98; *Ely* v. *Brown,* 183 id. 575.) As a matter of fact, he failed to prove that his possession was adverse to the heirs. The only proof of such adverse possession is that he simply remained in possession, paid taxes and some special assessments and made some very slight improvements. Henry

Krueger testified that he asked appellee several times for rent on the house after his mother's death, and that appellee replied that he didn't have it right then and that he was repairing the house. Appellee denied that any of the heirs of William Krueger asked him to pay rent, but he does not testify to any actions on his part that gave notice that he was claiming adversely to them. He further testified that he had to make the repairs in order to live in the place, and that he paid no rent since his mother's death because nobody asked him to do so. He further testified that he did not know whether or not he would have paid rent if they had asked him to do so. Adverse possession cannot be made out by inference or by implication, and the proof to establish it must be clear, positive and unequivocal. All presumptions are in favor of the true owner. To prove adverse possession the evidence must show that the possession is hostile, actual, visible, notorious and exclusive, and that it has been continuous for twenty years or more without any recognition of the title of the true owner. *Zirngibl* v. *Calumet Dock Co.* 157 Ill. 430.

The tax book which appellee testified at first was delivered to him after his mother's death by his step-father, and later that he delivered it to him before his mother's death and right after the conversation with his step-father in which his mother said that the property was to be his after her death, is no muniment of title whatever. It is merely a book kept by the widow which contained receipts for taxes and other outlays which she had made on the premises. It does not even appear that it was delivered to him at her request, and if it did, such fact would be of no consequence. There was no delivery of the possession of the property to him by her and no attempt to give him any right in the property except the void attempt to will it to him. The facts that he paid taxes and special assessments and made repairs on the premises have nothing to do with the issues in this case. At most they could only

be considered in a matter of accounting with the heirs of William Krueger should they ever make claim against him for rent. They are not parties to this suit, and such matters cannot be considered in deciding any issue in this case.

Appellee made out no defense against appellant's right to have his land title registered, and the court erred in dismissing appellant's application.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*

Mr. JUSTICE STONE, dissenting.