(No. 15648.—Reversed and remanded.)
JOHN SIEGLE *et al.* Exrs., Appellants, *vs.* JOHN CRISS
*et al.* Appellees.

*Opinion filed June 17, 1924.*

1. EJECTMENT—*when defendant may testify although executors and devisees are plaintiffs.* Under proper instructions a defendant in an action of ejectment may testify as to his occupancy of the disputed premises under claim of adverse possession, although the suit is being prosecuted by executors and devisees of a plaintiff who died after remandment of the cause on a former appeal.

2. LIMITATIONS—*what is necessary to establish title by adverse possession.* A party claiming title by adverse possession must show, by clear and positive proof, possession which is actual, visible and exclusive, hostile in its inception and acquired and retained for the statutory period, under claim of title inconsistent with that of the true owner.

3. SAME—*adverse claimant need not show muniment of title.* To establish title by adverse possession it is not necessary that the possession and claim of ownership be made under any muniment of title, but there must be a claim of ownership and such acts of possession as show that the party in possession in fact claimed title to the land.

4. SAME—*occupant without color of title may claim only what is enclosed or occupied.* Where a person enters upon a tract of land without color of title or an instrument defining the boundaries, his possession will not extend beyond what he has enclosed or actually occupies.

APPEAL from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

WILLIAMS & WILLIAMS, and WILLIAM & BARRY MUMFORD, for appellants.

EDWIN JOHNSTON, and CAPPS & WEAVER, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an action in ejectment, commenced in the Pike county circuit court October 25, 1919, by John Siegle and E. J. Strauss against John Criss and E. W. Fausek, and

involves the title to a wedge-shaped tract of land containing about 26.6 acres in that county, and described as a strip 4.38¼ chains wide at the north end and 8.76½ chains wide at the south end, off of the east side of section 36 in Ross township. The case was originally tried by a jury, where a verdict of not guilty was returned, and the court rendered judgment upon the verdict in favor of the defendants. A writ of error was prosecuted to review that judgment. The judgment was reversed and the case remanded. (*Siegle* v. *Criss,* 304 Ill. 338.) After remandment of the cause on account of erroneous instructions, the death of Strauss was suggested, and the executors under his will, William Strauss and J. C. Greenebaum, were substituted as co-plaintiffs in the action. The second trial of the cause before a jury resulted in a verdict of not guilty, and judgment was again entered by the court in favor of defendants. This appeal has been perfected by the plaintiffs to reverse that judgment.

Appellants hold the record title to the southeast quarter of section 36, township 7, south, range 5, west of the fourth principal meridian. That township is known as Ross township. Appellee Criss is the owner of the record title to about 47 acres of the southwest portion of section 31, in township 7, south, range 4, west of the fourth principal meridian. Fausek is his tenant. The last mentioned town is known as Pleasant Hill township. Ross township lies immediately west of Pleasant Hill township, and the south line of the two townships is the boundary line between Pike and Calhoun counties. It is conceded by appellants that the Criss premises, which adjoin the land of appellants on the east, as shown by the record title, consists of a triangular piece of land in section 31, bounded on the north and east by the natural stream Sny E'Carte, which enters the southwest quarter of section 31 at its northwest corner and flows southeasterly across that quarter section, on the south by the section, township and county line, and on the west by the section and township line. This property was previ-

ously owned by one Whiteside, the father-in-law of Criss. Whiteside bought the land about 1887 and lived on the property with his family until he died, about 1897, after which, it seems, his widow continued to have possession thereof till about 1905, when the property was sold at a master in chancery sale and purchased by one Chamberlain for Criss. A bond for deed was executed by Chamberlain in 1905, and Criss has been in possession of the property by himself and tenants since 1905. His deed from Chamberlain, conveying "all that part of the southwest quarter of section No. thirty-one (31), in township No. seven (7), south, and range No. four (4), west of the fourth principal meridian, in Pleasant Hill township, and containing 47 acres, more or less," was executed in September, 1914. Since the occupancy of Criss in 1905 he has continued to clear the land from time to time, and in about 1910 or 1911 had the present fence built on the west side of the disputed strip of land. About all of the strip, as we understand the testimony, is now cleared and has been to some extent cultivated by him.

Appellants have in this record shown a connected chain of title to the southeast quarter of section 36 from the government to themselves and have shown payment of all taxes and drainage assessments thereon. The record shows this quarter section was from about 1879 to 1907 owned by parties named Gruell. A house was built near the southwest corner of the quarter section about 1893. The property was occupied by tenants, and from time to time thereafter clearings were made for cultivation, extending north and east from the house toward the disputed strip of land. However, no controversy ever arose between any former owners or tenants relative to said tract until after appellant Siegle acquired title to the southeast quarter of section 36, about August, 1919, at which time Criss was in possession of the tract.

It is contended by appellees that appellants failed to show by a preponderance of the evidence that the strip of land in dispute is within the southeast quarter of section 36 in Ross township; that Criss and his grantors have been in the adverse possession of the disputed tract for more than twenty years prior to the commencement of this suit, and that such possession and location of the present west boundary line have been acquiesced in and recognized by the parties or their grantors during that period of time. These contentions are controverted by appellants, and they first insist that the disputed tract lies entirely within the southeast quarter of section 36 in Ross township. Several surveys have been made of the land by surveyors and engineers, and the whole difficulty as to the location of the township line has arisen in establishing the southeast corner of section 36 in Ross township and the southwest corner of section 31 in Pleasant Hill township. This question was covered quite thoroughly in our former opinion. It was there decided the surveys showed the disputed land is in section 36, and we see no reason for again going into detail in discussing the surveys and testimony at length.

Appellees say additional proof appears in the present record to substantiate their claim of the correctness of the Bowen-Pulliam survey of the Gruell land being the southeast quarter of section 36, made in 1892. We have read all of the testimony given by the surveyors and examined the several plats, including the government plats, offered in evidence. It is true that the Bowen-Pulliam survey seems to have been commenced at a point marked by a stone, which those surveyors designated as the southeast corner of the Gruell land, and then proceeds to lay out Gruell's 160 acres, instead of beginning at the southwest corner, as stated in our former opinion. However that may be, that survey, as shown by the plat thereof, resulted in the east and west lines of that 160 acres being diagonal lines instead of straight north and south lines to correspond with the

quarter and section boundary lines extended, and we think was erroneous. In fact, one of those surveyors stated on the plat, over his signature, that he was not satisfied with the correctness of the survey. All of the other survey plats submitted seem to show the township line between section 36 in Ross township and section 31 in Pleasant Hill township to be approximately straight north and south lines. The examination and consideration of the methods used in the Lyons survey, made in 1920, and the Early survey, made in 1918, for the express purpose of locating this township boundary line, convince us of their being approximately correct. We therefore conclude, as we formerly did, that without question the strip of land here in dispute lies wholly within the boundaries of the southeast quarter of section 36 in Ross township.

The claim of adverse possession on the part of Criss and his predecessors is the more serious question presented for determination. The record shows this land is in the Mississippi river bottoms and was generally covered with timber and underbrush and is somewhat cut up by natural streams, ponds and sloughs. The house in which Whiteside lived, upon the southwest quarter of section 31, was somewhere near the southeast part of his land. There is a slough, called Dunbar slough, near the south line of the disputed strip, which slough extends for some distance easterly. That slough comes within a few feet of a stone located at the southwest corner of the disputed strip, and which was taken as the southeast corner of the southeast quarter of section 36 in Ross township by the Bowen-Pulliam survey. There is a narrow strip of land between the south boundary line of the section here involved and the slough, and the strip widens as it extends easterly to the Whiteside house. This strip of land, and possibly a few acres immediately north of the Dunbar slough, the evidence tends to show was cleared by Whiteside about 1889 or 1890, and has been cultivated since that time by the

owners of section 31 in crops of different kinds. As to the remainder of the disputed tract, the evidence of adverse possession is inconclusive and uncertain. The record contains much testimony relative to fences constructed from time to time upon the Criss land and the disputed strip. A fence has been built for many years along the boundary line between Pike and Calhoun counties, which, as we have previously stated, is the south line of the lands of appellants and appellees. Whiteside had a fence extending from the Bowen-Pulliam stone northerly across the slough and easterly, enclosing, as we understand it, all the land south of Dunbar slough. The record also shows the construction of some fences near the northwest corner of Criss' land, possibly extending over upon the disputed strip. Other fences were built from the stone in question, at the southwest corner of the disputed strip, and extending in a northeasterly direction toward the Sny. All of these fences were for temporary use, only, and not intended to be run on any definite or fixed line. Where wire was used for fences it was stretched from one tree to another or to a post set now and then, which was seemingly sufficient to serve the purpose of making a stock pasture or feeding enclosure. One fence of this type was put up between the years 1897 and 1900 by a man named VanCleve, who was then a tenant on the Gruell land, for the purpose of pasturing cattle thereon. The testimony in the record, including that of Criss, shows that the last fence, which now forms the west boundary line of the disputed tract, was built by Criss about 1910 or 1911. Possibly some portion of the VanCleve fence was used by Criss, or at least the fence had the same starting point at the stone and extended northeasterly along the approximate line of the VanCleve fence for some little distance, but the evidence shows that a major part of the Criss fence was west of the VanCleve fence. There is also testimony in the record showing that there was some acreage cleared north of Dunbar slough on the disputed strip,

which had been growing corn and wheat, and that the crops had been put in up to the fence on the west. As to just how much acreage of the disputed tract north of Dunbar slough has been cropped, and for what period of time, is indefinite and uncertain.

Testimony was presented on the trial tending to show that Criss knew his deed called for approximately 47 acres of land in section 31 in Pleasant Hill township and that he did not claim any land in Ross township. There was no evidence introduced showing that prior to this lawsuit anyone questioned the possession of Whiteside or his successors in possession of any portion of the disputed tract. The most that can be said of Whiteside's possession is that he had a fence on the west side of the strip south of Dunbar slough, which land he had cleared and used, and had also cleared and used some acreage north of the slough, which is rather indefinite as to exact location. The greater portion of the improvement on the disputed strip in section 36 in the way of clearing was evidently done after 1905 by Criss and his tenants after he assumed possession of the land located in section 31 in Pleasant Hill township. Criss testified he cleared the balance of the disputed strip before he built the fence on the west boundary line, and admitted that fence was west of any former fence at the north end and that it was built about 1910 or 1911. He also testified at length as to other matters on the trial, and his testimony was objected to by the appellants because the suit was being prosecuted by the executors and devisees of E. J. Strauss, deceased. We think the testimony of Criss was competent under proper instruction as was given in the case by the court.

We have not set out in detail the testimony of any of the witnesses as it would serve no useful purpose. It is, to say the least, somewhat conflicting and in our judgment not sufficient to establish adverse possession of the strip in question, nor is it sufficient to show any acquiescence in

any recognized line between the several owners of the lands in the two adjoining sections. Where adverse possession is relied upon to defeat the title of the owner of land the possession must be hostile in its inception, and continue likewise, without interruption, for the full period prescribed by the Statute of Limitations. The possession must be actual, visible and exclusive, acquired and retained under claim of title inconsistent with that of the true owner. (*Downing* v. *Mayes,* 153 Ill. 330.) A party so claiming recognizes the legal title is in another person and bases his own right and claim upon holding adversely to such true owner for the statutory period. It necessarily follows that a party claiming by adverse possession must show by clear and positive proof that his possession is adverse; that he claimed the land as his own, openly and exclusively. (*Kirby* v. *Kirby,* 236 Ill. 255.) It is not necessary that the possession and claim of ownership be made under any muniment of title, but there must be a claim of ownership and such acts of possession as to show that the party in possession in fact claimed title to the land. It has been said: "What acts may or may not constitute a possession are necessarily varied, and depend to some extent upon the nature, locality and use to which the property may be applied, the situation of the parties, and a variety of circumstances necessarily have to be taken into consideration in determining the question. They must necessarily be left to the jury, whose peculiar province it is to pass upon the question of possession." (*Morrison* v. *Kelly,* 22 Ill. 609.) This court said in *Johns* v. *McKibben,* 156 Ill. 71: "To constitute such a possession there must be such an appropriation of the land to the individual as will apprise the community in its vicinity that the land is in the exclusive use and enjoyment of such person; * * * and when the property is so situated as not to admit of any permanent useful improvements, and the continued claim of the party has been evidenced by public acts of ownership, such as he would ex-

ercise over property which he claimed in his own right and would not exercise over property which he did not claim, has been held to be such possession as will create a bar under the Statute of Limitations." It has also been said that when a person enters upon a tract of land without color of title or an instrument defining the boundaries, his possession will not extend beyond what he has enclosed or actually occupies. *Fisher* v. *Bennehoff*, 121 Ill. 426.

From our consideration of the entire record we are forced to conclude that the proof presented is not such as will warrant the establishing of title to the entire acreage in dispute in Criss by adverse possession.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*