(No. 20045.—

STELLA DUNCAN, Defendant in Error, *vs.* WILLIAM ABELL, Plaintiff in Error.

*Opinion filed October 25, 1930.*

GEE & GEE, for plaintiff in error.

McGAUGHEY, TOHILL & McGAUGHEY, for defendant in error.

Mr. COMMISSIONER EDMUNDS reported this opinion:

On September 19, 1922, Stella Duncan, defendant in error, filed suit in ejectment in the circuit court of Lawrence county against William Abell, plaintiff in error, alleging that plaintiff in error unlawfully withheld possession of a described twenty-acre tract of land. A jury being waived trial was had by the court, and judgment was entered for defendant in error. Plaintiff in error paid the costs and pursuant to the provisions of the Ejectment act gave notice to vacate the former judgment and have a new trial. There was another trial by the court without a jury and judgment was again entered for defendant in error. The cause has been brought to this court by writ of error.

While the declaration averred that plaintiff in error was in possession of the entire twenty-acre tract, described as the south half of the northeast quarter of the northwest quarter of section 26 and hereinafter designated as the Duncan tract, the dispute related to but about two acres in the form of a narrow strip off of and across the north part of said tract. At the time of the filing of the suit, and for several years prior thereto, defendant in error had been the owner of the Duncan tract and plaintiff in error was the owner of the tract adjoining on the north, described as the north half of the northeast quarter of the northwest quarter of section 26, hereinafter designated as the Abell tract. Defendant in error proved an admittedly perfect record title which by description covered the strip in dispute, but plaintiff in error claimed title to the strip as the result of twenty

years' adverse possession by himself and his predecessors. Evidence introduced by plaintiff in error tended to show that some fifty years before the suit was filed the then owner of the Duncan tract verbally traded to the then owner of the Abell tract a narrow strip across the north end of the Duncan tract in exchange for a similar strip on other lands; that pursuant to this trade the rail fence which then stood on the true line between the Duncan and Abell tracts was moved south to cut off the strip in question from the Duncan tract and enclose it with the Abell tract, and that the then owner of the Abell tract, and all those who succeeded him, cultivated the Abell tract to this newly established line. In 1892 William A. Keneipp acquired title to the Abell tract and in 1896 the same Keneipp acquired title to the Duncan tract. Keneipp conveyed the Duncan tract in 1897, and Francis R. Duncan, father of defendant in error, deraigned title thereto through divers *mesne* conveyances. Defendant in error acquired title from him by inheritance. In 1899 Keneipp conveyed the Abell tract to Thomas W. Saunders, describing it as "the north half of the northeast quarter of the northwest quarter of section 26, containing twenty acres, more or less." Saunders owned the tract until his death, in 1919, and Mary A. Saunders, his widow and legatee, conveyed it that same year to plaintiff in error.

It is not contended that the trade by which the strip was allegedly taken off the Duncan tract and added to the Abell tract is material for present purposes in any other way than to show the location of the dividing fence between the two tracts as it has since existed, nor does plaintiff in error rely upon other acts by parties in possession before both tracts were acquired by Keneipp, his position being that Keneipp's grantee of the Abell tract, and those who succeeded such grantee, have held continuous possession to the line established by that fence, and that prior to the date of bringing this suit title to all the land up to that line had

thereby ripened by adverse possession extended over a period of twenty years.

No presumption is indulged in favor of a party claiming title to land by adverse possession, and he must prove, by evidence clear, positive and unequivocal, facts which show that he has acquired a good title by limitation. (*Yunkes* v. *Webb*, 339 Ill. 22.) It was for plaintiff in error to show that he and his predecessors in title took exclusive possession of the strip in question, that such possession was open, notorious, hostile and adverse, and that such open, hostile and exclusive possession continued uninterruptedly for the full statutory period. (*New York Central Railroad Co.* v. *Kinsella*, 324 Ill. 339.) The trial court found against plaintiff in error and that defendant in error was the owner of the premises described in the declaration. We are asked to set aside this finding. The issue is one of fact, (*White* v. *Harris*, 206 Ill. 584; *Truesdale* v. *Ford*, 37 id. 210;) and the question presented here is whether this finding is manifestly against the weight of the evidence. (*Marble* v. *Marble*, 304 Ill. 229.) Unless it is, it must be allowed to stand.

From an examination of the testimony it must be concluded that the fence constructed on the new line which resulted from the alleged trade had not been kept up and had substantially disappeared some years before suit was brought. What was referred to as a "fence row" followed its general line or course. Along this fence row there had developed a growth of brush, sprouts and trees, some of the latter being eight or ten inches in diameter. Witnesses who testified as to the existence of this fence row and the growth along it gave varying estimates as to the width of the growth, some stating it to be as narrow as twelve feet and others stating that it was as much as thirty-three feet wide. Towards its west end it sheered off to the south, around a bluff bank. Several witnesses testified for plaintiff in error that while Saunders owned the Abell tract it

was rented out to others and had been farmed "to the fence." However, it does not clearly appear that there was a continuity of such cultivation year by year, and it is evident that for a substantial part of the time cultivation to the line where the fence was built was prevented by the above mentioned growth of brush and trees. William A. Keneipp testified that he understood the Abell tract contained twenty-two acres but did not know how much was actually in it or how much was actually in the Duncan tract; that when he bought the Abell tract he "took possession down to the fence" and farmed it to that point, never changing the fence, and that he made a deed to Saunders but never went there and put him in possession. Gilbert Buchanan, a brother of Charles Buchanan, who owned the Duncan tract in 1901, testified that during that year he and his brother cleared up the old fence row and repaired the fence, placing the repaired fence, at the request of Saunders, on the same line as the old one, but that at the time of testifying, while old pieces of fence could still be seen, the timber had grown up there six or eight inches through. Plaintiff in error also presented several witnesses who testified to statements made by Francis R. Duncan which tended to show that he claimed to own only eighteen acres.

By way of rebuttal defendant in error introduced the testimony of several witnesses. T. N. Shrader testified that he was acquainted with the land and once had a conversation with Francis R. Duncan in which Duncan said he owned seven or eight rows of corn north of the fence and was letting the fence row grow up to timber; that when Buchanan owned the Duncan tract witness was there one time to doctor a horse and needed some poles, and that Buchanan told him to cut them in the fence row—that it belonged to him. George Osborne testified that he was township assessor at the time Saunders owned the Abell tract; that Saunders told him the tract contained twenty

acres, and he so assessed it; that witness once took an oil lease on the Abell tract from Saunders covering twenty acres, paying him ten dollars, or fifty cents per acre, and that witness also took an oil lease on the Duncan tract from Duncan covering twenty acres; that witness heard a conversation between Saunders and Duncan at a time when Saunders owned the Abell tract and Duncan owned the Duncan tract; that Duncan insisted upon Saunders paying for cleaning up a part of the fence row so Duncan could put a fence through there; that Saunders said he would not pay a cent as he did not expect to pasture it, but that Duncan could go ahead and clean it up as far as the briars extended and put in corn and have all he raised; that Saunders further said, "After you get the briars cleaned off there you can get some of the neighbors to measure it, and if there is any overplus I get half of it and you get half." Osborne further testified that Saunders then designated as a measuring base a rock at the point where the northwest corner of the Abell tract cornered with the southeast corner of witness' farm. G. T. Brothers testified that in 1918 Saunders wanted to sell the Abell tract and put a price on it of "$600 for the twenty acres." Eli Keneipp testified that he once had a conversation with Saunders about buying the Abell tract and Saunders referred to it as twenty acres. Mrs. Saunders testified that she negotiated the trade by which Abell acquired the Abell tract; that she never heard it referred to as being anything but twenty acres, and that she did not think at any time she claimed to own more than twenty acres there.

If plaintiff in error and his predecessors in title claimed to the line established by the fence which was built after the alleged trade, they claimed, in fact, not twenty acres, as much of the testimony shows they did, but some twenty-two acres. Assuming for the moment that if they really claimed to such line they would not be estopped from acquiring title to that point by the mere reason of being un-

der the impression that the tract contained only twenty acres, the fact remains that they could only acquire title past the line resulting from giving effect to the descriptions contained in the deeds and to the fence line by open, notorious, hostile and exclusive possession of all the ground included between the line based on the descriptions and the fence line, continued uninterruptedly for the statutory period. The strip to which the alleged adverse claim is made was necessarily a comparatively narrow one. The evidence does not disclose a situation in which there was in continuous existence through such statutory period a definite and unchanging line to which exact point cultivation or some other active gesture of ownership was uninterruptedly extended. Existence and development of the growth along the fence row made this impossible. The exact point to which acts of possession were extended is shrouded in a haze, and it does not satisfactorily appear that such acts as were established were continuous and uninterrupted. Moreover, there is testimony which casts doubt upon the intention of one of plaintiff in error's predecessors in title to make any adverse claim whatever. Under all these circumstances this court is not warranted in saying that the plaintiff in error has proved by the clear, positive and unequivocal evidence which the law requires that he has acquired a good title by limitation, (*Hankey* v. *VanScyoc*, 338 Ill. 533,) nor can we say that the trial court's finding is manifestly against the weight of the evidence, consequently that finding must be allowed to stand.

The judgment of the circuit court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*