(No. 20409.—

JOSEPH JACOBI *vs.* ANNA JACOBI *et al.*—(PETER KASKIE, Appellant, *vs.* THE FOREST PRESERVE DISTRICT OF COOK COUNTY, Appellee.)

*Opinion filed October 23, 1931.*

CUMMINGS & WYMAN, (AUSTIN L. WYMAN, and HAROLD ENGSTROM, of counsel,) for appellant.

GEORGE A. BASTA, and WILLIAM C. WERMUTH, for appellee.

Per CURIAM: On February 9, 1928, Joseph Jacobi filed his bill in the circuit court of Cook county, against his wife, Anna Jacobi, and the Forest Preserve District of Cook county, for the partition of twelve and one-half acres of land lying north of Irving Park and east of the DesPlaines river, in what is known as Schiller Park. The cause was referred to a master to take the evidence and report his conclusions. Pending the hearing Jacobi and his wife died and their devisees were substituted as parties. The master found that Jacobi and wife had no title to the land and that the bill should be dismissed for want of equity. Exceptions to the report were overruled, a decree was entered as recommended, and an appeal has been prosecuted to this court by Peter Kaskie, a devisee.

The only question for determination is whether Jacobi and wife and their devisees had title to the land based upon adverse possession for twenty years. Mrs. Jacobi by her will left all of her property to her two sons, Peter Kaskie and Thomas Jones, subject to a life estate in her husband. Joseph Jacobi willed all of his property to Kaskie and Jones in equal parts. At the time the bill was filed Jacobi was

seventy-eight years old and his wife was eighty-one. Adjoining the twelve and one-half acres was a five-acre tract, upon which there were a house, a barn and other buildings. With the exception of about two years Mrs. Jacobi and her family had lived on this five acres since about the year 1884. The twelve and one-half acres were vacant and unoccupied but they had been used to raise vegetables and for pasture. There was a fence around all or a part of this land for many years, but the fence had been in various states of repair. In the fall of 1890 Mrs. Jacobi moved to Chicago, where she was later married to Jacobi. For two years they lived in Chicago, where Jacobi was employed in the barns of the American Express Company. In 1892 the house on the five acres burned and later it was replaced by Jacobi. About two years after his marriage Jacobi moved into the house on the five acres and used the twelve and one-half acres for the raising of vegetables and for pasturage. James H. and George Lomax owned land adjacent to the premises in question. On October 4, 1904, they filed in the circuit court of Cook county a bill for partition of the premises in question and other property belonging to them. Jacobi and wife were made parties defendant and were represented by Johan Waage, who filed an answer for them. A written stipulation was filed, in which it was agreed that a decree should be entered providing that Jacobi and wife were the owners of the five-acre tract and that they had no right, title or interest in the twelve-and-one-half-acre tract, which was owned by Marie Lomax, Robert D. Lomax and James Wright. Pursuant to this stipulation, on June 27, 1905, a decree was entered by consent which found the rights of the parties as provided in the stipulation. Waage testified that on July 10, 1905, he gave a certified copy of this decree to Jacobi. An appeal was prosecuted from that decree to this court, (*Lomax* v. *Lomax,* 218 Ill. 629,) but no change was made as to the land in question. Jacobi and his wife did not claim to have

title by a deed or other color of title but their claim of ownership was based entirely upon adverse possession for twenty years. On February 20, 1917, the Forest Preserve District of Cook county purchased the twelve and one-half acres from Lomax and a warranty deed was filed for record. There is evidence that prior to 1917 (the date of the deed) Mrs. Jacobi and her husband paid the taxes on the twelve and one-half acres, and the master found that they had paid them for twelve years prior to 1917. After the deed of February 20, 1917, the twelve and one-half acres were removed from the tax books and no assessments were made against them after that time.

To establish title by twenty years' adverse possession the claimant must prove that he and his predecessors in title have been in the actual, visible, notorious, exclusive and continuous possession for that period under claim of ownership and that the possession was hostile or adverse in its origin. (*Maremont* v. *Ovenu*, 329 Ill. 374.) The possession must commence and continue under a claim of right to hold the land in fee against the true owner and all other persons. (*Kinder* v. *LaSalle County Coal Co.* 301 Ill. 362.) The adverse claimant must prove by clear, positive and unequivocal evidence that he acquired a good title by limitation. No presumption is indulged in his favor. (*Yunkes* v. *Webb*, 339 Ill. 22.) Possession by one other than the holder of the record title is presumed to be subordinate to the record holder. (*New York Central Railroad Co.* v. *Kinsella*, 324 Ill. 339.) Where the statute is arrested the claimant must begin *de novo*. (*Chicago and Alton Railroad Co.* v. *Keegan*, 185 Ill. 70.) In 1892 Jacobi and wife left Chicago and moved into the house on the five acres and farmed the twelve and one-half acres. This was the first time Jacobi could claim any adverse possession. The statute ran from 1892 until 1905. The operation of the statute was arrested not only as to Jacobi but also as to his wife by the entry of the consent decree of June 27, 1905, in the parti-

tion proceedings brought by Lomax. (*Oberein* v. *Wells*, 163 Ill. 101.) The evidence shows, however, that the possession of Jacobi after the decree of 1905 was substantially the same as the possession prior to that decree. While the decree found that Lomax was the owner of the twelve and one-half acres, there is no evidence that he ever took possession or disturbed Jacobi in his possession after the decree. In 1929 Mrs. Jacobi was awarded $8500 for the five acres in a condemnation suit brought by the forest preserve district. It is established by the evidence that Jacobi and wife were in continuous possession of the twelve and one-half acres from 1905 until 1917. So far as appears from the record, however, the possession of the Jacobis was the same prior to as after the consent decree of June 27, 1905, by which decree they admitted they did not own the land involved and the decree shows they made no claim of ownership. The admission on their part that they were holding possession in subordination to the record title of Lomax showed that their possession prior to the decree lacked the necessary element of claiming ownership. This element of adverse possession was likewise lacking in their possession of the property subsequent to the decree unless they show a change in the character of possession bringing notice to the owner of a claim of ownership. The statute could not be said to begin to run until such change and notice occur. Where one claiming under the Statute of Limitations has acquired possession in subordination to the title of the owner of the fee, as was admitted by the Jacobis in the consent decree of 1905, a clear and positive assertion of an adverse right showing a claim of ownership must be definitely brought to the knowledge of the title owner before any foundation can be laid for the running of the statute. *Branch* v. *Central Trust Co.* 320 Ill. 432; 1 R. C. L. p. 722, sec. 37; p. 747, sec. 68.

It is one of the essential elements of title by adverse possession that such possession be under claim of owner-

ship from its inception. Here the possession of the Jacobis was exactly the same after the decree as before. There was no new taking and there was no notice to the owner of any claim of ownership inconsistent with their admission in the consent decree. While the record shows they paid taxes after the decree and until the property was taken off the tax books on purchase of the tract by the forest preserve district it does not appear whether they paid taxes before the decree. Certainly, after· entry of that decree their adverse possession, if such was to exist, must begin *de novo*. This means that they must prove possession showing some evidence of a claim of ownership different from that which by the consent decree they admitted was not a possession under claim of ownership. Unless such is shown the Statute of Limitations does not begin to run, and it is impossible, therefore, that it ripen into title. No presumptions are indulged for the benefit of such title, but in order that it ripen it must be hostile and adverse in its inception. In order to be hostile and adverse it must be under claim of ownership, hence possession which is not under claim of ownership in its inception cannot ripen into an adverse title. (*Joseph* v. *Evans*, 338 Ill. 11.) The Jacobis did not show title by adverse possession. This being true, it does not become necessary to consider the effect of the deed made by the Lomaxes to the forest preserve district in 1917. There never having been any change in the possession of the Jacobis from the time when they admitted by the consent decree that they were not claiming ownership the statute did not begin to run, and therefore the question of whether it was tolled by the deed to the forest preserve district is of no consequence.

The chancellor did not err in dismissing the bill for want of equity, and the decree will be affirmed.

*Decree affirmed.*