**SUPERIOR OIL CO. v. HARSH et al.**

No. 7800.

Circuit Court of Appeals, Seventh Circuit.

Feb. 26, 1942.

Rehearing Denied April 4, 1942.

EVANS, Circuit Judge, dissenting.

Russell Wilson, of Centralia, Ill., and Wm. M. Acton, of Danville, Ill., for appellants.

W. B. Wagner and J. P. Adoue, both of Houston, Tex., and Charles Wham and John P. Wham, both of Centralia, Ill., for appellee.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This appeal involves a controversy over the right to oil from 6/10 of an acre of land in White County, Illinois. The determinative question is one of title since both parties base their claims upon leases executed by different lessors as the owners of this particular piece of property.

Jurisdiction of the cause rests upon diversity of citizenship. The Superior Oil Company, a California corporation, brought this suit against the defendants to enjoin them from drilling an oil well upon 6/10 of an acre known as the school house site, located in the southwest corner of a tract of 12.17 acres which was part of the 149 acres upon which the plaintiff had an oil and gas lease from one Helen M. Ford, the record fee owner.

Three of the defendants are the school trustees and the other four are men interested in a later lease of the school site executed by the trustees. The defendants' answer to the suit was that their lease was valid because the trustees had title by (1) adverse possession for fifty-five years and (2) the presumption of an ancient grant. The district court, after a hearing, made special findings of fact, stated its conclusions of law thereon and entered a decree for the plaintiff holding its lease valid and the lease from the Trustees of Schools invalid and enjoined the defendants from using the land in question for oil and gas purposes. The defendants' appeal is from this adverse decree.

The controlling facts are not in dispute. Plaintiff's lessor, Helen M. Ford, is the record title owner of the 12.17 acres of land which include the school house site of 6/10 of an acre. Originally, this specific tract of 12.17 acres belonged to Stephen Fitzgerald and then to his three sons, Charles, Edward, and John. After 1887 the land was owned by Charles and Edward, until the partition of the estate between them in 1892. The chain of title of this land, now in Helen M. Ford's name, is unbroken.

On October 5, 1873, School District 5, now known as 95, was defectively organized. The defect was not cured until April of 1886 when the Board of Trustees, headed by Charles Fitzgerald, acted favorably upon a petition of John Fitzgerald and others for the proper formation of the district. Prior to 1886 the small school house had been erected in the extreme southwest corner of the 12.17 acre tract at a cost of $377. The construction costs were paid in the summer of 1886 and that fall the school opened for its first term. Since that time the building has been used continuously as a school and the district has kept it and the other usual country school house appurtenances in repair. At no time in the long time preceding the dispute did the trustees make any effort to set off the now claimed site from the rest of the 12.17 acre tract, and at no time prior to September 17, 1940, did any hostility exist between the trustees and Helen M. Ford or her predecessors in title as to the title, occupation and use of the school buildings and the premises for such school purposes. The record owner once built a fence along the north and east sides of the present school house site in order to keep his live stock from roaming upon the school playground, but that has long since disappeared. The school trustees took no part in either its construction or maintenance. The only line of demarcation is brush growing irregularly along the old fence line and it is that which the defendants fixed upon as the boundary when they first made a survey sometime after the start of the controversy.

During the entire existence of the School District the site has not once been excepted from the tax books. The owners of the larger tract have always paid the taxes assessed without excepting the part occupied by the school. Among these very taxes have been those for the maintenance of the school and under the statutes they have been collected by the treasurer for the trustees.

There is no deed of record to the trustees and no proof that one for the site was ever executed. It is true that the trustee records show that in 1887 the Board instructed its treasurer to notify the owner of the site "to make proper deed" to the Board and that in 1890 the president of the Board was directed "to see an attorney" and learn what proceedings could be had "to secure title to the school house site" in District 5, but the record is entirely bare of any evidence that a deed was executed and delivered; there is no showing of any other action toward obtaining a conveyance. A former director of the Board did testify that he had received certain records from his predecessor among which was an envelope marked "Deed", but that he had never examined the contents of the envelope before the envelope was destroyed by a fire.

Upon these facts, defendants claim there should be the complete defense of a presumption of an ancient grant in fee title to the trustees, as well as the defense of the statute of limitations because of adverse possession.

■ Doctrinally speaking, there is a distinction between these two defenses which is recognized by the courts of Illinois (Trustees of Schools v. Lilly, 373 Ill. 431, 26 N.E.2d 489) and by text-writers. Tiffany on Real Property, 2d Ed., 1920. Under most factual circumstances, however, in disputes between private parties the consequences of either theory are the same. The presumption of an ancient grant is not one of law; it is rather a rule of evidence which depends upon questions of fact. Actual proof of the execution of a conveyance is not necessary. The presumption may be made when the facts are such that a conveyance might have been executed and the presumption of its execution would solve the difficulties arising from the lack of proof of execution. In other words, it is an inference that under the facts it is reasonable that the individual must be rightfully in possession under a lost grant. The defense of the statute of limitations because of adverse possession is of a different nature. Under it, when a party has been in possession of land under a claim of ownership for more than twenty years, the statute (Ill.Rev.Stat.1941, Ch. 83, § 1) bars the true owner from dispossessing the claimant, though his possession may have been wrongful and without right. There is no presumption of the rightfulness of the claimant's possession: he prevails only because the true owner has not seasonably asserted his right of ejectment.

■ We do not believe that the facts of this case will support a presumption of an ancient grant in fee title to the trustees. Without resorting to the presumption, there are no difficulties which the facts and the reasonable inferences from them will not explain. In our case the school house was built upon land of men interested in the establishment of the school. In every conveyance made since that day, the school house site has been always included in the land conveyed and the taxes paid have always been paid by the record title owner upon the assessments made on the whole tract, without exception for the land in use for educational purposes. It seems inescapable that the school was upon the site with the permission of the title owner and in subordination to the claim of his fee title. The instructions of 1887 and 1890 contained in the reports of the Board do not weaken the conclusion. There are no entries as to any steps taken in furtherance of these instructions (themselves separated by three years). In fact, several years after the last instruction, the record title owners did not join the trustees in the partition suit of 1892 although the school house site was part of the land involved. Everything is consistent with the record title owner's continued ownership and the trustees' use as permissive and in submission to that superior title; nothing is shown which will justify defeating her title by a presumption of an ancient grant.

■ Nor have the defendants established the defense of the statute of limitations based upon adverse possession. Adverse possession can not be made out by inference or implication, for the presumptions are all in favor of the true owner, and the proof to establish it must be strict, clear, positive, and unequivocal. Zirngibl v. Calumet Dock Co., 157 Ill. 430, 448, 42 N.E. 431; Siegle v. Criss, 312 Ill. 617, 144 N.E. 307; New York Central R. R. Co. v. Kinsella, 324 Ill. 339, 155 N.E. 284; Jones v. Scott, 314 Ill. 118, 145 N.E. 378 and Town of Kaneville v. Meredith, 351 Ill. 620, 624, 184 N.E. 883. The doctrine is to be construed strictly, Horn v. Metzger, 234 Ill. 240, 245, 84 N.E. 893, and no presumption is indulged in the claimants. Theiner v. Speckin, 290 Ill. 181, 187, 124 N.E. 826. "To constitute possession that is adverse and sufficient to defeat the claim of the holder of the legal title * * * the possession must be hostile in its inception." Leonard v. Leonard, 369 Ill. 572, 576, 17 N. E.2d 553, 555. We have already held that the trustees' original possession was in submission to the title of the real owner and consequently such possession was not hostile or adverse. And where the possession has been consistent with, or in submission to the title of the real owner, nothing but a clear, unequivocal and notorious disclaimer and disavowal of the title of such owner, will render the possession, however long continued, adverse. Rigg v. Cook, 4 Gilman 336, 9 Ill. 336, 351, 46 Am.Dec. 462. There was no such disclaimer by the school authorities until the discovery of oil, when they made the lease now used as a defense. We therefore must hold the defendants' defenses do not defeat the plaintiff's lessors record title

and the District Court properly granted plaintiff's prayer for relief.

The decree is affirmed.

EVANS, Circuit Judge (dissenting).

Disposition of this appeal turns on the evidence of adverse possession.

As the majority opinion points out, under Illinois law each fact essential to the establishment of twenty years' adverse possession must be proven by him who claims title by adverse possession. No presumption exists in his favor.[1] The rule which recognizes a presumption of *adverse* holding following twenty years open, continuous, notorious possession, which prevails in Wisconsin[2] and many other states, does not prevail in Illinois. We must, and do assume, that the adverse claimant must show (a) possession, (b) for twenty years, (c) possession must be open and notorious, (d) continuous, and (e) adverse.

I think the burden has been met and all the elements necessary to a showing of title through adverse possession are here present. To support this conclusion, I point to and rely on:

(1) Possession has been open and notorious. A public school building has been built thereon, and a public school has been conducted therein.

(2) The possession has been continuous, and not merely for twenty years, but for over fifty years.

(3) It has been adverse all the time.

Only as to requirement (3) can there be controversy. In other words, if the claim of adverse possession fails, at all, it must be because the proof is not conclusive on the *adverse* character of the possession.

My inquiry then is narrowed to a study of the *adverse* character of defendants' occupancy.

The facts which impel me to the belief that defendants' possession was adverse are:

(a) The long, continuous, undisputed occupancy, I find difficult to explain except on the theory of hostility to the title owner.

While no presumption in Illinois arises by reason of the length of possession, this fact colors the evidence. It carries factual, as distinguished from statutory, or legal presumptive weight. To illustrate, twenty years' possession with no rent or use payment, would carry some factual implications in any case. The same kind of possession, *without* rent for *150 years* would result in a stronger reaction as to adversity of said possession. In fact, it would seem to me conclusive. Here there was possession for more than fifty years. Not one, but three, different record title owners permitted and acquiesced in defendants' occupancy without charging one dollar of rent. Overwhelming are the deductions from such thoroughly established fact.

(b) The property was enclosed by a fence, trees, and hedge. Even more important was the fact that the record title owner erected the fence which separated the school from the rest of his farm. His affirmative action was significant.

Often an adverse claimant erects the fence to enclose the land he claims, but seldom do we find the record title holder, *himself,* building the fence which separates his farm from the adverse claimant's land. The difference, in probative value, is that which may be found in an admission over a self-serving declaration.

(c) Defendants paid no rent for the premises. Many are the legitimate deductions which rise from fifty years of occupancy without payment of rent.

(d) Well-nigh conclusive is the effect of the evidence which shows adverse claimant's expenditure of money sufficient to build a school house on the lot adversely claimed.

We may doubt the sufficiency of evidence of occupancy to conclusively establish adversity, which is passive, quiet, and not especially public in character, involving no outlay of money for improvements, though it be for a period of twenty years. We may say such possession is not conclusive on the issue of adversity, but rather presents a jury question on a controverted issue of fact.[3]

But when we substitute for the foregoing, possession for fifty years instead of

[1] Town of Kaneville v. Meredith, 351 Ill. 620, 184 N.E. 883; Jacobi v. Jacobi, 345 Ill. 518, 178 N.E. 88; Duncan v. Abell, 340 Ill. 613, 173 N.E. 59; Sundstrom v. Village of Oak Park, 374 Ill. 632, 30 N.E.2d 58, 131 A.L.R. 1465.

[2] Wollman v. Ruehle, 104 Wis. 603, 606, 80 N.W. 919.

[3] Duncan v. Abell, 340 Ill. 613, 173 N.E. 59; Burns v. Curran, 282 Ill. 476, 118 N.E. 750; Carroll v. Rabberman, 240 Ill. 450, 88 N.E. 995; Rush v. Collins, 366 Ill. 307, 8 N.E.2d 659.

twenty, the possessor's expending money (the larger the more significant) to erect a building on the premises, the question is quite different. Then add acquiescence by the title holder, evidenced by his building a fence to separate his farm from the lot occupied by the school district, and on which a school house is built, and finally, add to the foregoing the element of utmost publicity of said occupancy, by the adverse claimant, and we have the present case. Such a situation, in my opinion, demands a directed verdict, or a finding by the court, of adverse holding.

It is quite impossible for me to reconcile plaintiff's right to go upon the property now, and take possession of it with all its improvements, with these facts. Taking possession of it for the purpose of drilling a well thereon, to discover, or pump, oil is founded on no greater right (but is builded upon the same evidentiary foundation) as its right to take over the school house. If defendants have failed to establish adverse possession, their right to their school house *(as well as to the oil)* is gone. For the significance of a rejection of adverse possession applies to the surface and to the improvement built thereon, the same as to the oil beneath the surface. Yet it shocks my sense of justice to deny the school district the right to its school house which it built and has publicly, notoriously, and continuously used for over fifty years. The fight for the oil may not carry the same warmth of feeling but it rests on exactly the same ground as the title to the land upon which the school house stands. The issue of adversity and the evidence in support thereof, are the same in either case.

*Against these impressive facts, I find no* contrary evidence, save the asserted payment of taxes and a burden of proof. The evidence, it seems to me, fails to show plaintiff or its predecessors paid taxes *on this lot* after defendants built their school house thereon. There is nothing included in the tax receipts for improvements on the lot. From this fact, I assume that the tax receipt was but a copy of the predecessor's receipts and did not except this small tract acquired by the defendants from the larger forty acre tract. The land was only worth a few dollars an acre, and the town officer neglected to make the exception. True, the matter of the tax payment is not satisfactorily clear, but the failure to include in the tax receipts, the improvements, is the most significant fact bearing on this issue.

It is unfortunate that no living witness was found who could, by competent evidence, establish the circumstances under which the school district went into possession of this lot. Neither party can be blamed for this state of the record. Lapse of time only, is responsible. It is to meet just such situations that the doctrine of title by adverse possession was evolved. One state after another enacted laws which sought to settle disputes over title, to which there were no end. Statutes of repose (now adverse possession) they were called. But, alas, there can be no repose or quiet title where the itching palm and the lure of profits incident to the discovery of oil, tempt the get-rich quick seeker to chance a law suit for high stakes.

I think the judgment should be reversed.