(No. 15674.—Reversed and remanded.)
LIZZIE K. JONES, Appellant, *vs.* WILLIAM R. SCOTT *et al.*
Appellees.

*Opinion filed October 28, 1924—Rehearing denied Dec. 3, 1924.*

1. EJECTMENT—*when rule permitting establishment of boundary by parol agreement does not apply.* Whenever a boundary line between adjoining owners of land is unascertained or in dispute the line may be established by parol agreement and possession in pursuance thereof, and the agreement will bind the parties and their privies; but the rule does not apply where the true boundary is known and the parties establish a boundary for convenience of cultivation.

2. LIMITATIONS—*statute does not run against permissive use.* Where one goes into possession of land by agreement with the true owner without any claim of ownership the Statute of Limitations will not run against the true owner by reason of such permissive possession, and where the party in possession has set up the statute in defense to an action of ejectment it is incumbent on him to show that his possession has changed from permissive use to adverse possession for the statutory period.

3. SAME—*presumption is in favor of true owner.* Title by adverse possession cannot be established by inference or by implication but the proof must be clear, positive and unequivocal, and all presumptions are in favor of the true owner.

4. SAME—*what is necessary to prove adverse possession.* To prove adverse possession the evidence must show that the possession was hostile, actual, visible, notorious and exclusive, and to establish title it must have been continuous for twenty years or more under claim of ownership and without any recognition of the title of the true owner.

5. SAME—*when jury may consider statements of party in possession after statutory period has run.* Where the defendant in an action of ejectment has set up the Statute of Limitations, evidence of statements made by him after the statutory period has run may be considered by the jury in determining whether or not there ever was adverse possession by the defendant, and instructions that such statements may be considered as evidence of the character of the possession should not be modified to read that the statements could be considered only if made before the expiration of the statutory period. (*Carroll* v. *Rabberman,* 240 Ill. 450, followed; *Illinois Central Railroad Co.* v. *Wakefield,* 173 id. 564, distinguished.)

APPEAL from the Circuit Court of Champaign county; the Hon. FRANK LINDLEY, Judge, presiding.

FRANK P. SADLER, and DELBERT R. ENOCHS, for appellant.

HENRY T. SCHUMACHER, and HERRICK & HERRICK, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant filed suit in ejectment to recover a tract of approximately seven acres of farm land in Champaign county from appellees. The issue was submitted to a jury in four separate trials. In the first trial the jury found the issues for appellant and in the subsequent trials for appellees. The location of the land in dispute is shown by the following plat:

It is the tract lying north of the highway where it crosses the southwest quarter of the northeast quarter of section 8. The declaration was also for the small tract in the northeast corner of said forty-acre tract lying south of the road and east of the drainage ditch, as the same is shown on the plat. The jury found for the appellant as to this tract and there is no dispute here over it.

It is not disputed that the plaintiff proved title to the premises in herself by showing a continuous chain of title from the United States government and that she and her predecessor in title paid all taxes. Her father, Samuel Koogler, purchased the forty acres of which these seven acres form a part, on the 30th of April, 1867. Appellees' predecessor in title to the land lying immediately north of this strip was Abel S. Scott. Scott lived about a quarter mile east of the tract of land in controversy, on the same side of the road. Koogler lived about a half mile west of the strip of land in controversy and on the south side of the road. Scott owned the forty acres joining the strip on the north. Koogler owned the forty acres lying just west of this last named forty of Scott's. It is not disputed that for more than thirty years Scott farmed the land in question and Koogler farmed a strip of Scott's land off the west side of the forty acres lying immediately north of the land in controversy of approximately the same size. The road, as shown by the plat, does not run on quarter section lines. The evidence shows that in an early day the strip of land in question was low and swampy, and the road, by reason of that condition, followed the high ground on the south side of the swamp, and thereby became located in such a way as to separate the strip in controversy from the balance of the forty acres lying south of it. Scott and Koogler were both dead at the time of the trials.

Appellees defend on the ground, first, that the boundary lines between Scott and Koogler were established by agree-

ment between them, and that they recognized and conceded the rights of each other as fixed and determined by the fences establishing and determining the lines between the farms. They also defend on the ground of adverse possession for more than twenty years.

The rule is, that whenever a boundary line between adjoining owners of land is unascertained or in dispute they may establish it by parol agreement and possession in pursuance of that agreement, and the line so established will be binding on the parties and their privies. The effect of such an agreement is not to pass the title of real estate from one party to another by parol, for such cannot be done, but to fix the location of an unascertained or disputed boundary. If the location of the true boundary line is known to the owners they cannot transfer the land from one to the other by an agreement changing such location. There are but two conditions under which the rule in relation to establishment of boundary lines by agreement applies: One is where a line is in dispute, and the other is where it has not been ascertained. In either case the agreement is for the purpose of establishing the disputed or unascertained line. So the rule does not apply if the intention of the parties is merely to determine the exact or true line. Under such an agreement the line will not be established merely because of such agreement previously being entered into by the parties. *Marks* v. *Madsen*, 261 Ill. 51; *Purtle* v. *Bell*, 225 id. 523; *Sonnemann* v. *Mertz*, 221 id. 362; *Grubbs* v. *Boon*, 201 id. 98; *LaMont* v. *Dickinson*, 189 id. 628; *Clayton* v. *Feig*, 179 id. 534; *Sheets* v. *Sweeney*, 136 id. 336; *Yates* v. *Shaw*, 24 id. 368.

The record is barren of any evidence of those elements held by courts generally to be necessary in order to establish boundary lines by agreement. The evidence showed a government survey of these lands. There is no evidence whatever that either of these parties did not know the true

boundary line. In fact, all of the evidence shows that they did know the true boundary line, and that whatever the arrangement was, it did not have for its purpose the establishment of a boundary line. Under this condition of the record the appellees offered, and the court gave, an instruction which in effect told the jury that if they believe from the evidence that Scott and Koogler made an oral agreement, by the terms of which they settled the boundary lines between them as to the south and west boundaries of the forty acres lying north of the tract in question, by which the tract in controversy was included in said forty acres, and if they further find that under such agreement they held possession of their respective lands under the boundaries so established by such agreement, they should find the defendants not guilty as to the tract in question. As the record contains no evidence to which the rule with reference to the establishment of boundary lines by agreement could apply, there was therefore no evidence upon which to base this instruction and it should not have been given.

The controversy on the facts in the case arises over the character of the possession of these two strips of land, appellees contending that Scott's possession was adverse for more than the statutory period of time, while appellant contends that such possession was at no time adverse but was at all times permissive under a mutual arrangement between Scott and Koogler for the exchange of use of the two strips as a matter of convenience. The record tends to show that Koogler and Scott took possession of these separate tracts under a mutual arrangement of some character. While adverse possession may be shown by acts of proprietorship as well as by verbal claims, the Statute of Limitations does not run against permissive use or use by consent, and in computing the running of the period of such statute it is incumbent upon one urging it as a defense that he show that the relation by which the defendant holds the land has

changed from a permissive use or use by consent to an adverse possession. Adverse possession cannot be made out by inference or by implication. Proof to establish it must be clear, positive and unequivocal. All presumptions are in favor of the true owner. To prove adverse possession the evidence must show that the possession was hostile, actual, visible, notorious and exclusive, and that it has been continuous for twenty years or more under claim of ownership and without any recognition of the title of the true owner. (*Haley* v. *Johnson,* 292 Ill. 525; *Theiner* v. *Speckin,* 290 id. 181; *Horn* v. *Metzger,* 234 id. 240; *Zirngibl* v. *Calumet and Chicago Canal and Dock Co.* 157 id. 430.) Possession, to be adverse to the true owner, must be under claim of ownership on the part of the one seeking the benefit of the Statute of Limitations, and where one goes into possession of land by agreement with the true owner without any claim of ownership, the statute will not run against the true owner by reason of such permissive possession. *Page* v. *Bellamy,* 222 Ill. 556; *Brettmann* v. *Fischer,* 216 id. 142; *Shaw* v. *Schoonover,* 130 id. 448.

Appellant offered, and the court admitted, evidence of W. J. Day, a surveyor, to the effect that Scott in 1915 stated that he wanted a survey made of this strip of land, which he characterized as the land of Mrs. Jones, (the appellant,) lying north of the road and west of the ditch, also of a part of his own land which lay south of the road and west of the ditch, so that he could either buy Mrs. Jones' land or make her a proposition to trade. Appellant's evidence showed that in 1916, in a conversation with the witness Condit, who was farming appellant's land south of the road, Scott said he would like to get the matter of the land north of the road settled, and offered to buy this land and pay appellant $225 per acre for it, or to trade his land south of the road and west of the ditch for it. Appellant's evidence also shows that about 1913 or 1914, in a conversa-

tion with O. B. Dobbins, an attorney of the city of Champaign, Scott stated that he had been trying to buy the strip of land from Koogler but that he wouldn't sell it, and wanted to know if the land could not be condemned for a drainage ditch and then sold to him so he might acquire title to it. Dobbins told him that if he had twenty years' adverse possession of the land he needn't buy it but the title was vested in him by reason of adverse possession; that Scott wanted to know what was meant by adverse possession, and Dobbins told him that if he had been in open possession of the land for twenty years, claiming to own it, he would be able to keep it; that Scott replied that he had not claimed to own it; that the land belonged to Koogler, and he merely occupied it under an agreement with Koogler while Koogler was occupying and farming a strip of his (Scott's) land. The evidence of appellant also showed that in a conversation with the witness Wright, Scott stated that there was a mutual agreement between him and Koogler for the convenience of both of them; that they used that way to get out of the land from the north to the road; that there had been mutual usage of the land.

The trial court modified instructions 2 and 12 offered by appellant concerning the above evidence. These instructions were to the effect that conversations with Scott in which he stated that he occupied this land under mutual agreement with Koogler, that he had never claimed to own the land and that he offered to buy it, were competent evidence to be considered by the jury in determining the character of the possession of the land in controversy which was held by Scott and whether or not he had claimed to own the land during the twenty years' time. The court modified the instructions by inserting in each that the jury might consider the statements of Scott only if they were made before the twenty year Statute of Limitations had run. It appears that these conversations were had more than twenty

years after Scott came into possession of the strip in question. Appellant contends that this amendment was prejudicial error. Appellees urge that this court has held that statements of a party defending in an ejectment suit on the ground of adverse possession, made after twenty years' possession, are not competent, but that in order to be competent it must be shown that they were made within the twenty years, for the reason that title acquired by adverse possession under the twenty year Statute of Limitations cannot be divested by any subsequent oral statement acknowledging the title of the true owner, and that it was not, therefore, error to so modify the instructions. They cite in support of that contention *Lyons* v. *Stroud,* 257 Ill. 350; *Carroll* v. *Rabberman,* 240 id. 450, *Illinois Central Railroad Co.* v. *Wakefield,* 173 id. 564, and others.

In *Lyons* v. *Stroud, supra,* the evidence showed that the defendant said he had not claimed to own the property until after twenty years had elapsed; that this declaration was made twenty-eight years after he entered into possession. It was there held that the twenty-year period having been completed before such declaration was made it would not be sufficient to divest him of title. In the *Rabberman case, supra,* it was contended that statements made by Rabberman more than twenty years after he took possession, in which he consented to the erection of a fence on the surveyed line, were improperly admitted. It was held that if the statute had run in his favor the title thus acquired could not be divested by his declaration. It was held, however, that such declarations were competent evidence, though inconclusive as to whether Rabberman had ever claimed to hold possession adversely to Long and Carroll. The statement in that case was made twenty-six years after possession started. In the *Wakefield case, supra,* the court holds that the Statute of Limitations had run and that title had vested in Wakefield before the statements made by him and that they would not operate to divest him of title.

In the case before us the question of adverse possession for any period of time is strongly controverted. It was for the jury to determine whether, in fact, adverse possession had been had for the statutory period of time. One of the necessary elements of such adverse possession to permit the running of the statute is claim of ownership. These statements were therefore competent to be considered by the jury, not as divesting Scott of any title which he might have acquired, but as evidence on the question whether or not the statute had ever begun to run. As said in the *Rabberman case,* such evidence is not conclusive but is for the consideration of the jury; and in this case, while the court admitted the evidence, the amendment of appellant's instructions 2 and 12 told the jury that they could not consider such statements unless they were made prior to the running of the twenty year Statute of Limitations. As the statements were made more than twenty years after possession was taken, the instructions as modified doubtless had the effect of causing the jury to believe that the court was of the opinion that the Statute of Limitations had run and in effect removed from their consideration the evidence of the admissions of Scott as testified to by the witnesses. The jury should have been allowed to consider this testimony, with all the other testimony in the case, on the question whether or not there had ever been adverse possession of this land by Scott. It was error, therefore, to so amend these instructions.

While this case has had four trials before a jury and we regret very much the necessity of returning it for further trial, we are of the opinion that the errors committed were prejudicial to the rights of the appellant, and the judgment must therefore be reversed and the cause remanded.

*Reversed and remanded.*