(No. 26916.—)
ALBERT LOVERKAMP, Appellant, *vs.* LESTER LOVERKAMP, Appellee.

*Opinion filed November 17, 1942—Rehearing denied Jan. 15, 1943.*

Isaac K. Levy, and Roy R. Helm, for appellant.

Grover E. Holmes, and Chas. Durfee, for appellee.

Mr. Justice Murphy delivered the opinion of the court:

This is an appeal from a judgment entered in an ejectment suit in the circuit court of Massac county. The chain of title, under which the respective parties claim, runs to a common source in Charles Redmeier, Jr. On and prior to December 5, 1916, Redmeier owned other lands and the north half of the northeast quarter of section twenty-four, township fifteen in said county. On that date, he and his wife conveyed by warranty deed the northwest quarter of the northeast quarter of said section twenty-four to his son Henry. Plaintiff's chain of title is as follows: Charles Redmeier, Jr., to Henry Redmeier, he to Charles Loverkamp, and Charles Loverkamp to plaintiff. Defendant's chain of title is Charles Redmeier, Jr., by descent to Emma Redmeier, his widow, Henry Redmeier, a son, and Lena Dummeier, a daughter, and they to defendant, Lester Lover

kamp. All of the conveyances in plaintiff's chain of title described the tract conveyed as the northwest quarter of the northeast quarter and all the deeds in defendant's chain of title described the land conveyed as the northeast quarter of the northeast quarter.

A public highway enters the northeast quarter on the north line at or near the dividing line between the northwest quarter and the northeast quarter of said quarter section and extends due south six chains and then in a southwesterly direction intersecting the south line of the north half of the northeast quarter and then on south. The divergence of the road from a north and south line creates a triangular-shaped tract containing three and one-half acres, which is the tract involved in this litigation. The cause was tried before the court without a jury and resulted in a finding and judgment in favor of defendant.

The complaint contained two counts, the first of which alleged defendant unlawfully withheld from the plaintiff possession of the northwest quarter of the northeast quarter, etc. Count 2 alleged defendant unlawfully withheld from the plaintiff a certain parcel of land described, to-wit:

"All that portion of the Northwest one-fourth ($\frac{1}{4}$) of the Northeast Quarter ($\frac{1}{4}$) of Section No. Twenty-four (24) Township Fifteen (15) South, Range Five (5) East of the Third Principal Meridian, in Massac County, Illinois, which lies East, Southeasterly and South of the public road that runs through said forty acre tract, as the same now exists, containing Three and One Half (3.5) acres, more or less;
said parcel of ground being more particularly described; A parcel of ground described as follows:
Beginning Six (6) chains South of the Northeast corner of the Northwest one-fourth ($\frac{1}{4}$) of the Northeast Quarter ($\frac{1}{4}$) of Section Twenty-four (24), in Township Fifteen (15) South, Range Five (5) East of the Third Principal Meridian, on the East side of the public highway; thence South 86° 30′ East to the southeast corner of the Northwest one-fourth ($\frac{1}{4}$) of the Northeast one-fourth ($\frac{1}{4}$) of the aforesaid section, Township and Range; thence West 87° East to the public road; thence in a Northeasterly direction, along the public road to the place of beginning, being 3.5 acres, more or less."

Defendant's answer traversed the allegations of unlawful withholding in both counts. Defendant's special defense number one alleged he was possessed of and claimed to be the owner of all of the north one-half of the northeast quarter lying east of the public road, and pleaded adverse possession under the twenty-year Statute of Limitations. Defendant's special defense number two, filed after the evidence was heard and the cause argued orally, alleged the defendant claimed to own all of the north one-half of the northeast quarter lying east of the public road and alleged that the dividing line between the northwest quarter of the northeast quarter and the northeast quarter of the northeast quarter was fixed by agreement of Charles Redmeier and Henry Redmeier, which agreement was made when Charles Redmeier sold the land to Henry in 1916, and that by said agreement the public road marked the dividing line between the two tracts. Defendant claimed he was the owner of all of the north one-half located east of the roadway by virtue of said agreement and twenty years' adverse possession by him and his predecessors in title. Plaintiff traversed the material facts in both of defendant's special defenses.

Defendant introduced the evidence of Emma Redmeier, the widow of Charles Redmeier, Jr., deceased, Henry Redmeier, a son, and Nora Redmeier, Henry's wife. The evidence of these witnesses tended to prove that a few days prior to the execution of the deed from Charles Redmeier and wife to Henry Redmeier, December 5, 1916, Henry Redmeier and Charles Redmeier, Jr., agreed that the road right-of-way should be the dividing line between the northwest quarter of the northeast quarter and the northeast quarter of the northeast quarter. Plaintiff objected to the introduction of such evidence and now urges its admission and consideration as grounds for reversal. Defendant offered the evidence on the theory that whenever a boundary line between adjoining owners of land is unascertained or in dispute, the parties may establish it by parol agreement

and possession in pursuance of that agreement, and contends that when a line is so established it will be binding on the parties and their privies.

It is well established that the rule sought to be invoked by defendant cannot be applied unless at least one of two conditions exists, namely: there must be a dispute between the adjoining owners as to the location of the line, or that the line has not been ascertained. (*Jones* v. *Scott,* 314 Ill. 118; *Marks* v. *Madsen,* 261 id. 51; *Purtle* v. *Bell,* 225 id. 523.) The application of the rule is limited to the establishment of a disputed line or the locating of an unascertained line. *Jones* v. *Scott, supra.*

The line between the northwest quarter of the northeast quarter and the northeast quarter of the northeast quarter was not marked by government survey but that survey showed witness marks and monuments by which the location of boundary lines of the whole northeast quarter could be readily located. The boundary line of the northeast quarter being thus determined, it was a simple matter to determine the location of the lines between the quarters of the northeast quarter. For many years prior to December 5, 1916, Charles Redmeier, Jr., owned the whole of the north half of the quarter and he did not establish the line between the two forties. He constructed fences on either side of the road disregarding the location of any of the quarter-quarter lines. Consequently, when he and Henry had their conversation a few days prior to the execution of the deed relative to the location of the line, no dispute had then arisen as to its location.

The elements of the second condition under which the rule can be applied were not present. Appellee contends the evidence of the surveyor and others leaves a doubt as to whether the road right-of-way was on the quarter-quarter line for the first six chains south from the north line of the quarter. The evidence as to the location of the public road on the quarter section to the north and the evidence of the surveyor is convincing that the roadway is on the

quarter-quarter line for that distance. Although the line between the two quarter quarters had not been definitely located by measurement or survey, yet the parties knew it would be equidistant from the east and west boundary line of the quarter. When located it would necessarily be a straight line, but all the witnesses who were interrogated as to that matter testified that after the first six chains from the north line of the quarter, the road veered to the west and continued in a southwesterly course to the south line. There is no evidence that any part of the three and one-half acres is in the northeast quarter of the northeast quarter. To give effect to the oral agreement between Charles and Henry Redmeier as testified to by the three witnesses would be to hold that the terms of the oral agreement should overcome the provisions in the deed to convey the northwest quarter of the northeast quarter. The oral agreement would take three and one-half acres from the land deeded from Charles Redmeier to Henry Redmeier. It is clear oral agreements can not be introduced in evidence and given such effect in ejectment suits.

The case of *Kesl* v. *Cobine,* 313 Ill. 438, was an ejectment action where the deed of one of the parties included the disputed strip. Evidence was offered by the other party to prove that the common grantor stated before the conveyances were made that the property line between the two tracts would be a certain designated place, which would indicate the strip in dispute as the property of the one offering the evidence. The trial court rejected the introduction of such evidence. In affirming the ruling this court said: "Appellant's deed did not convey to him the land in question but appellees' deed from the same grantor did convey to them the disputed land. If it was intended to convey the strip to appellant and not to appellees, that fact could not be shown in defense of an ejectment suit; nor was it competent to prove the grantor of appellant told him before he purchased, that the line of his land would be 25 feet east of the residence, which would give him the

disputed tract." The evidence of the three Redmeier witnesses in reference to the agreement between Charles Redmeier and Henry Redmeier was not admissible in this action.

To overcome plaintiff's record title to the disputed tract, defendant claims benefit of the twenty-year Statute of Limitations. During Charles Redmeier, Jr.'s., ownership of the north half of the quarter there were a house and other farm buildings on the northwest quarter of the northeast quarter just west of that part of the highway that is located on the quarter-quarter section line. He occupied this as a home. In 1917, subsequent to the making of the conveyance to his son, he erected a house and other farm buildings across the road on the northeast quarter of the northeast quarter and occupied it as a residence until his death July 12, 1933. Thereafter, the widow, Emma Redmeier, occupied it as a home until she conveyed the northeast quarter of the northeast quarter to the defendant in 1937. None of the buildings was located on the tract in dispute and it does not appear that it was ever separately enclosed by a fence. During the lifetime of Charles Redmeier, Jr., Henry Redmeier farmed his father's land located in the northeast quarter of the northeast quarter and the disputed area was included in this farming arrangement. After the death of his father, he continued as a tenant of Emma Redmeier.

From the facts related, it is obvious that Charles Redmeier's possession of the disputed strip was not hostile in its inception but was a permissive use, granted by the son to the father. Adverse possession can not be made out by inference or by implication. The proof to be established must be clear, positive and unequivocal. All presumptions are in favor of the true owner. To entitle the person urging the Statute of Limitations as a defense the evidence must show that the possession was hostile, actual, visible, notorious and exclusive, and that it has been continuous for twenty years or more under claim of ownership and with-

out any recognition of the title of the true owner. *Jones* v. *Scott, supra; Theiner* v. *Speckin,* 290 Ill. 181; *Zirngibl* v. *Calumet and Chicago Canal and Dock Co.* 157 id. 430.

It should also be noted that during the lifetime of Charles Redmeier, Jr., Henry Redmeier at various dates executed three mortgages creating a lien on the land described as the northwest quarter of the northeast quarter. The last mortgage was foreclosed, and the complaint, decree and master's deed, which was executed November 15, 1938, described the whole of the northwest quarter of the northeast quarter. Near the close of the period of redemption, Henry Redmeier executed a quitclaim deed to the mortgagee, Charles Loverkamp, in which he described the whole of the northwest quarter of the northeast quarter. It is also significant that when the children of Charles Redmeier conveyed to the widow August 12, 1933, they gave a warranty deed describing the land conveyed as the northeast quarter of the northeast quarter. From these facts and others of record, it is evident that the defendant has not shown a right to claim the title to the disputed tract by reason of adverse possession under the twenty-year Statute of Limitations.

For the reasons assigned the judgment of the circuit court is reversed and the cause remanded with directions to proceed in accordance with the views expressed.

*Reversed and remanded, with directions.*