(No. 31664.—

IRMA SOTTIAUX *et al.*, Appellees, *vs.* DICK BEAN *et al.*, Appellants.

*Opinion filed November 27, 1950—Rehearing denied Jan. 15, 1951.*

CASSIDY & SLOAN, of Peoria, for appellants.

MORGAN, PENDARVIS & MORGAN, of Peoria, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is a direct appeal from a decree entered in the circuit court of Peoria County. A freehold interest is involved. In this opinion the appellees will be referred to as the plaintiffs and the appellants as the defendants.

On December 27, 1943, the plaintiff Irma Sottiaux filed her complaint in the circuit court of Peoria County and by stipulation her husband, Jules L. Sottiaux, was later made an additional plaintiff. The complaint sought to restrain the defendants from preventing plaintiffs and their tenants from using a brick driveway, the use and ownership of which is the subject matter of this suit.

The parties to the suit were neighbors owning lots on either side of the brick driveway. It was alleged in the complaint that plaintiffs were the owners of lot 8, block 1 in Bunn's Subdivision, known as 1119 Knoxville Avenue in the city of Peoria and that defendants were the owners of lot 9, block 1 of said subdivision, known as 1115 Knoxville Avenue, adjoining plaintiffs' property to the south. Plaintiffs' lot is improved with a two-story frame residence facing Knoxville Avenue, with a frame garage at the rear opening to the east on a private driveway and connecting with the brick driveway on an angle. Defendants' lot is improved with a two-story frame residence with a frame barn on the rear. Plaintiffs' garage has been erected and continuously used as such for upwards of 40 years. The complaint also alleged, "Approximately the South 2 feet of plaintiff's lot and the North five feet of defendants' lot are and have been for over 40 years improved with a brick

paved private driveway extending from Knoxville Avenue to the Public alley in the rear of said lots and affording the only means of ingress to and egress from plaintiff's said garage."

The complaint further states that for at least forty years prior to the time defendants acquired title, plaintiffs and their predecessors in title used said private driveway for traveling between Knoxville Avenue and the alley, as the sole means of ingress and egress from the garage, and as a place upon which to park automobiles and other vehicles; that such use was "open, adverse, uninterrupted, exclusive, continuous and under a claim of right; and that during all of this time defendants' predecessors in title freely and openly acquiesced in such use;" that, therefore, by reason of such use, the plaintiffs are now vested with a prescriptive right or easement to the exclusive use of that portion of said driveway located upon defendants' said premises.

The complaint further set forth that defendants claimed to own the driveway; prevented plaintiffs from using it and threatened to tear it up. The prayer of the complaint asked that defendants be enjoined from in any manner interfering with plaintiffs' use of the said driveway and for damages.

The answer disputed and denied all the material allegations of the complaint. A counterclaim in ejectment was also filed by defendants alleging the entry and withholding of possession of a portion of lot 9 by the plaintiffs.

The plaintiffs filed a verified answer to the counterclaim alleging that for more than twenty years prior to defendants' ownership of lot 9, the plaintiffs and their predecessors in title to lot 8 had been in possession of the north approximately six feet of said lot 9 and that said possession was open, notorious, continuous, exclusive, uninterrupted, hostile, adverse, against the whole world and under claim of ownership. The answer further stated that

by reason of the foregoing facts the claim of the defendants to said strip of land has long since been barred by the Statute of Limitations.

The cause was referred to a master in chancery, who, after taking evidence, found in favor of the plaintiffs, holding that the use made of the driveway by the successive owners and tenants of lot 8 had created a prescriptive right or easement in the plaintiffs to the exclusive use of said driveway. The master also found that the successive owners of lots 8 and 9 have, by their acts and declarations and acquiescence, adopted the south line of said driveway as the south line of lot 8 for a period of more than twenty years before defendants acquired title to lot 9 so that said line cannot now be questioned.

On a hearing of exceptions to the master's report, the circuit court entered a decree awarding a fee-simple interest in the driveway to the plaintiffs but disallowed any claim for damages. The court based its finding on a parol agreement implied from the acts, declarations and acquiescence of the respective former owners and their tenants, fixing the south line of said driveway as the dividing line between lots 8 and 9 and the recognition of said dividing line and use and occupancy in accordance therewith for a period of more than twenty years. The decree perpetually enjoined the defendants from using, trespassing upon, destroying or in any manner injuring the said private driveway.

By this decree a strip of land approximately five or six feet in width, which, under the plat, was a part of lot 9, was vested in the plaintiffs absolutely.

The plaintiffs insist that because no reply was filed to a verified answer in ejectment which set up the affirmative defense of adverse possession and the Statute of Limitations, the facts alleged in such answer stand admitted, and decree should be entered in accordance therewith, citing *Horner* v. *Jamieson*, 394 Ill. 222. Plaintiffs failed to take any steps to preserve this point and introduced evidence on

all the material issues in the cause. In the case of *Cienki v. Rusnak*, 398 Ill. 77, we ruled that, "Where, in the absence of a reply, defendant introduces evidence to prove an affirmative defense, the failure to file a reply is waived and the absence of a reply does not constitute an admission."

The facts supporting both the proof of plaintiffs and of the defendants show substantially the following situation: A plat was introduced in evidence, showing the two properties to have a frontage on Knoxville Avenue of fifty feet each. The brick driveway in controversy extending from Knoxville Avenue to the alley is shown between the houses and purports to have a width of about 7.35 feet. There is no testimony in the record showing who built the driveway or when it was built. Both properties are improved with frame buildings. At the rear of plaintiffs' lot 8 (1119 Knoxville Avenue) is a frame garage. It was built in 1904 or 1905, sometime after the construction of the brick driveway. The garage is built on a slight angle about 3½ feet north of the driveway and opens diagonally upon it by means of a concrete apron or approach. On the rear of defendant's lot 9 (1115 Knoxville Avenue) is a frame barn. It has two sliding doors, one on the east side opens into the alley and the other on the north side opens towards the driveway. For many years there was a brick walk leading from the rear of defendant's house northerly to the brick driveway.

The proof of the plaintiffs in support of their claim of forty years' adverse use begins with the testimony of one Benjamin Greene. His father acquired title to lot 8 in 1899, when witness was fourteen years of age. George Winters had previously, in 1897, acquired title to lot 9. The Greene and Winters families were then next door neighbors and were very friendly. Greene said he took it for granted that the driveway was on their property and made use of it for various purposes. The Winters family never made any objection to such use and never said any-

thing about it. The Winters family never at any time owned an automobile. Greene's father died in 1900, but the members of the family used the driveway until the home at 1119 Knoxville Avenue was sold in 1911 to Dederich Velde. Greene testified further that only his mother and stepfather continued to use the driveway during the time they lived there. There is no testimony as to how the driveway was used from 1911 for a period of about 12 years.

H. D. Morgan, one of the attorneys for the plaintiffs in this cause, was called as a witness. He stated that in March, 1923, he moved into the house at 1125 Knoxville Avenue. At that time lot 8 was owned and occupied by Mae Meredith; that she never owned an automobile, but Morgan had occasion to see that Mrs. Meredith and her tenants, relatives or occupants used the driveway in controversy. Mae Meredith sold the premises known as lot 8 (1119 Knoxville Avenue) in 1932 to the Christian Buehler Memorial Home, which owned the property until 1941. Morgan's testimony also disclosed that while the Home owned the premises, it was generally used as a rooming house and he could not remember a time that he didn't see some tenant's car parked on the driveway. The rental agent for the Home testified that tenants regularly parked cars on the driveway. The property at 1119 was sold to the plaintiffs in 1941.

Considerable evidence appears in the record showing that a concrete sidewalk was constructed on the south side of plaintiffs' home; that service doors led from the concrete strip to the first floor and the basement, and showing the proximity of the home to the brick driveway.

In behalf of the defendants a great deal of testimony was introduced showing use of the driveway by Mr. and Mrs. Winters. Mrs. D. W. Hartman and Mrs. Parry, old residents of the neighborhood, testified positively that for a good many years they saw the driveway used to unload

coal into the Winters' coalbin located on the north side of the Winters' home. Mrs. Parry further stated on the witness stand that her mother rented space in the Winters barn to park her electric car; that Mr. Winters told her to use the driveway to get in and out and that she regularly did use the drive; that after her mother's death, she, Mrs. Parry, regularly used the drive to go in and out. Joseph Hietter, owner of a grocery business in the neighborhood, testified that he delivered groceries to the Winters' home for a period of more than twenty years and that in making such deliveries he usually drove his delivery wagon or automobile onto the brick driveway, stopping at the brick walk at the rear of the Winters' home where he regularly delivered the groceries. He also testified to the location of two windows or chutes into the Winters' coalbin, one on the north side of the home next to the brick driveway and one on the west facing the alley. His brother, Frank Hietter, testified to the same facts except that he stated he had made such deliveries at the Winters' home for over forty years and ordinarily used the brick drive for such service. All of these witnesses testified that no one had ever objected to such use of the drive. Other similar testimony concerning the use of the drive was also introduced by the defendants.

No controversy over the use of the driveway seems to have occurred until about 1943, when the plaintiffs and defendants became the respective owners of said lots 8 and 9.

Based upon this rather extensive review of the evidence and the record, we do not believe the decree entered by the circuit court can be approved.

The complaint, aside from its prayer for an injunction and for damages, claimed a prescriptive right or easement to the exclusive use of the disputed portion of the driveway. It was alleged that for at least forty years plaintiffs and their predecessors in title had used the private drive-

way as the sole means of ingress to and egress from their garage with their automobiles and as a place upon which to park such vehicles. The circuit court by decree awarded plaintiffs a fee-simple title to the entire driveway, which is not based strictly upon any allegations of fact or prayer for relief in the complaint.

It is conceded that plaintiffs' deed did not by legal description convey to them the main portion of the brick driveway, but that defendants' deed did convey the disputed strip to them. To overcome defendants' record title, the plaintiffs claim benefit chiefly from the twenty-year Statute of Limitations. Acquiring title by adverse possession requires the strictest kind of proof. In repeated decisions we have announced the rule to be that adverse possession cannot be made out by inference or implication, for the presumptions are all in favor of the true owner, and the proof to establish it must be clear, positive and unequivocal. (*Pullman Car and Manufacturing Corp.* v. *Stroh,* 349 Ill. 492.) In *Lovercamp* v. *Lovercamp,* 381 Ill. 467, it was stated that "To entitle the person urging the Statute of Limitations as a defense the evidence must show that the possession was hostile, actual, visible, notorious and exclusive, and that it has been continuous for twenty years or more under claim of ownership and without any recognition of the title of the true owner." *Jones* v. *Scott,* 314 Ill. 118; *Town of Kaneville* v. *Meredith,* 351 Ill. 620.

We believe the proof of plaintiffs fails to show that all of the above required elements concur. Certainly, the use of the driveway was not hostile in its inception because the Greene family and the Winters family lived side by side in entire harmony for a great many years with no evidence of disagreement over the use of the driveway. Neither does the evidence show continuous posssion for the period of twenty years, for the reason that the record is silent as to what occurred between the years 1911 to 1923. From 1923 to 1932 the only evidence was from

observations made by one of the attorneys for plaintiffs.

The testimony is not at all satisfactory as to claim of right known to the owners of lot 9 and acquiesced in by them. The proof does not clearly establish exclusive possession, for the record discloses a large amount of evidence as to use of the driveway made by the owners of lot 9. While there is evidence that might support a decree providing for an easement or joint use of the driveway, it is our opinion that the plaintiffs have failed to prove title by adverse possession by the clear, strict, positive evidence required by the well-established rules of this court, and, particularly, have not presented sufficient testimony to warrant the granting to them a fee title to the disputed strip of the driveway.

Since the adverse possession is denied, the question of damages is not material. The circuit court correctly disallowed the plaintiffs' claim for damages.

For the reasons stated, the injunction issued by the circuit court should be dismissed and the judgment reversed and the cause remanded with directions to proceed in a manner not inconsistent with the views expressed.

*Reversed and remanded, with directions.*