(No. 33533.— )

RUTH S. CLAVEY *et al.,* Appellants, *vs.* ANNA BOBZIEN *et al.*—(ANNA BOBZIEN, Appellee.)

*Opinion filed September 23, 1955—Rehearing denied Nov. 21, 1955.*

RUGEN, LIGTENBERG & GOEBEL, of Chicago, (RICHARD C. RUGEN, of counsel,) for appellants.

FRANK M. OPEKA, of Chicago, for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This is an appeal from a judgment of the superior court of Cook County, awarding the principal defendant, Anna Bobzien, ownership, by adverse possession, of a disputed tract of land claimed by her and by the plaintiffs, Ruth S. Clavey and John W. Clavey, her husband. The land in question is about 1326 feet long, east and west; 16.37 feet

wide north and south at the west line, and 17.967 feet wide north and south at the east line.

By their original complaint in ejectment against the defendant and others, filed October 10, 1949, plaintiffs alleged ownership of twenty acres of land occupied as a home and farm for more than thirty years; that all taxes levied against said land had been paid by them during that time; that on or about May 27, 1947, the named defendants had taken possession of a portion of this land on the northerly edge thereof without any consent, lease, claim, or right, and were unlawfully withholding possession from plaintiffs. The relief sought was that plaintiffs be restored to possession and awarded damages for the wrongful detention. The answer of defendants denied the allegations of the complaint; alleged that the defendant, Anna Bobzien, was the owner of an 18½ acre tract adjoining the plaintiffs' twenty acres on the north; alleged possession of this land for more than forty years and that the boundary between the two tracts had been established by a line fence more than forty years before, a portion of which fence still remained.

Plaintiffs filed an amended complaint, the first count of which adopted the original complaint in ejectment. The second count, brought under the provisions of the Permanent Survey Act of May 10, 1901, (Ill. Rev. Stat. 1953, chap. 133, pars. 11 through 15,) states that Anna Bobzien, hereinafter called defendant, is the owner of the adjoining 18½ acre tract but alleges that the boundary is in dispute; that the corners are lost and are otherwise not definitely determined and asks for the appointment of a commission of surveyors to make a survey and permanently establish the corners and boundaries of the tracts. The answer to the amended complaint adopted the original answer to the count in ejectment and alleged that the Permanent Survey Act was not applicable. On motion by plaintiffs to strike the latter portion of the answer, the court ruled in their

favor and appointed a commission to make a survey and report. The report of the surveyors, subsequently filed, located the true boundary line between the tracts as being north of the line which the defendant contends was the line established by the fence, and indicates an encroachment upon the strip of plaintiffs' land, the dimensions of which were heretofore given.

The cause was heard by the court without a jury. By stipulation the separate surveys made by defendant and plaintiffs, and the various reports and surveys of the commission were admitted in evidence, and the respective titles of plaintiffs and defendant established. Testimony was heard for both plaintiffs and defendant upon the disputed issues of fact. At the close of the evidence, the court, by its judgment order, ratified, confirmed and approved the report of the commissioners establishing the boundary line between the two tracts and directed that such boundary line should be considered as permanently and unalterably confirmed and established. But the judgment found for the defendant, Anna Bobzien, on her claim of ownership by adverse possession of the disputed strip of land and ordered that title to said land be vested in her by virtue of the Limitations Act. Plaintiffs appeal only from the latter portion of the judgment of the trial court. They have no objection to the findings of the commissioners or the approval of their report. No cross appeal was filed. The sole question presented by this appeal is whether the evidence is sufficient to establish ownership of the disputed strip of land in the defendant by reason of adverse possession.

Certain facts are not in dispute. Plaintiffs, Ruth S. Clavey and John W. Clavey, are in possession and the owners in fee simple, as joint tenants, of the south 20 acres of the north 70 acres of the east half of the southeast quarter of section 9, township 41 north, range 12 east of the third principal meridian. Defendant, Anna Bobzien, is in possession and the owner in fee simple of the north 18½

acres of the south 38½ acres of the north 70 acres in the same half of the same quarter-section which adjoins the land of the Claveys on the north. Both tracts of land are bounded on the west by East River Road and on the east by the east line of the southeast quarter of said section 9. Plaintiffs and defendant derive their titles from a common source, namely one John H. Sabin who became the owner of the north 70 acres above described by deed dated April 30, 1873. Title of defendant, Anna Bobzien, to the 18½ acres was acquired by deeds to her recorded on May 25, 1947, after mesne conveyances from Sabin and wife to Stanley H. Kunz, from Kunz to Clarence A. Earle and wife and from the latter to Frederick Bobzien, father-in-law of defendant. Plaintiff Ruth S. Clavey, formerly Ruth Sabin, and her sister, Irene S. Sabin, later Irene S. Clark, acquired title to the 20-acre tract by deed recorded November 21, 1904. Later, Ruth S. Clavey acquired the interest of Irene S. Clark by deed recorded July 3, 1918. No dispute or question as to the boundary line between the tracts arose until late in 1946, when the Claveys, because they intended to sell off some lots, had a survey made. This survey was shown to defendant who thereafter in 1947 likewise procured a survey. Differences in these surveys led to a dispute which resulted in the present action. The disputed strip, as shown by the surveys adopted by the trial court, is included within the boundaries of plaintiffs' 20-acre tract and is south of the south boundary of defendant's 18½-acre farm. Since there has been no appeal from the judgment of the court approving and confirming the lines shown by these surveys, they must be accepted as correct. This means that legal title to the disputed strip of land was in plaintiffs and defendant's claim must be sustained, if at all, on the ground of adverse possession.

Since the judgment sustaining the defendant's claim takes from the plaintiffs and gives to the defendant the fee title to a portion of the plaintiffs' land, a freehold is

necessarily involved and the cause is properly before this court on direct appeal. *Nelson* v. *McCabe Development Co.* 408 Ill. 263; *Klein* v. *Mangan,* 369 Ill. 645.

The essence of defendant's claim is that the predecessors in title of plaintiffs and defendant by agreement made in 1910 established the boundary line between their land along the approximate south boundary of the disputed tract and constructed a line fence thereon extending the entire length of the tract from west to east, or approximately 80 rods; that one half of this fence was built by the owners of the land to the north and one half by the owners of the land to the south; that thereafter each of the respective parties and their successors in title were in exclusive possession of and exercised full dominion over the land on their respective sides of the fence. Plaintiffs deny that there was an agreement as to the boundary line. They also deny the building of a boundary fence, as described by defendant. It is their contention that a pasture fence was the only fence ever built near the north line of their land, and that it was built and maintained by plaintiffs and their predecessors in title at their own expense and for their own use and convenience; that the north line of this pasture fence did not extend the entire distance from west to east and was never intended as a boundary fence.

Considerable testimony was offered by the parties in support of their respective positions. Albert Carle, a witness for plaintiffs, who was 71 years of age and had lived on the property across the road from the Clavey and Bobzien farms since he was nine months old and during the time the Sabins, Clarks and Claveys had occupied the south 20-acre tract and the Bobziens the north 18½-acre tract, testified that the only fence on the north side of the Clavey property was a pasture fence which extended about one third of the way back from East River Road toward

the east; that it then ran south, west, and north and enclosed a pasture in which the Sabins and later the Clarks and Claveys kept horses and stock; that he was positive that the north line of this fence never extended further back than about one third of the distance toward the east line of the property; that there never was a fence beyond it and that the fence extended about as far as some low ground; that the fence around the pasture was maintained by the Claveys and Clarks and that he had helped repair it; and that it included a grove of trees near the northwest corner of the Clavey property. Irene S. Clark, who was born and raised on the 20-acre tract and who lived there until 1918, testified that there never had been any discussions about the property line; that no agreement as to a line had been reached and no line fence put up; that the north line of the pasture fence extended only about one third of the way toward the east line of the property; that there was swampy ground and a drainage ditch beyond, and then hay ground, and that at one time the north line of the pasture fence had been extended to the east by a temporary fence so that cows could pass through to the hay ground.

Plaintiff John Clavey, who had lived on and farmed the 20-acre tract for 34 years, testified that he was familiar with the pasture fence and had often repaired it and denied that it had ever been a line fence. He testified that neither he nor defendant knew where the line was until he had his survey made in 1946; that the survey showed his north line to be north of the pasture fence and that he asked defendant to keep off until the dispute was settled but the defendant had not complied with his request. Plaintiff Ruth S. Clavey testified that the pasture fence, originally built by her parents and later maintained by her husband and her, was the only fence ever placed on the north part of the 20-acre farm. Both plaintiffs testified that there was

a strip of land between the properties which neither of the parties litigant plowed or worked, on which wild bushes had grown up; that both plaintiffs and defendant had plowed "a certain distance" without knowing exactly where the boundary line was until after the surveys.

Defendant, Anna Bobzien, testified at the trial upon two different occasions, once when called as an adverse witness and later on her own behalf. As an adverse witness, she admitted that she did not know where the true line was until after the surveys; that she claimed only 18½ acres and had paid taxes on only 18½ acres "exact." However, she testified on her own behalf, that about 1910, Mr. Clark and Mr. Sabin had made certain measurements and had then called the defendant and her husband to the fence line and had pointed out a line that corresponded with the north line of the pasture fence; that the parties had agreed upon that line as the boundary line and that they had each built half the fence, the Clarks and the Sabins the west half using cedar posts, and the Bobziens the east half using oak posts. Elmer Ritter, a grandson of Anna Bobzien, testified that he had worked on the farm for his grandmother for the past eleven years, identified the disputed strip of land on the surveys and claimed they had farmed it continuously for that period. He also stated that at one time there had been a fence extending the entire distance across the property from west to east and identified ten photographs taken under his direction which were received in evidence. Edward Ritter, a son-in-law of Anna Bobzien, testified concerning the construction of the fence as related by Anna Bobzien, and stated that each of the parties involved constructed 40 rods of the boundary line fence. He also stated that Mrs. Bobzien and those working for her farmed up to the fence line. John Lewerenz, a neighbor, who had known the parties and property for thirty to fifty years stated there had been a fence running the entire distance across

the property but that there was no fence at present, only a few posts and brush and some trees.

From this sharply conflicting testimony and from the pictures and exhibits introduced at the trial, we fail to find a clear preponderance of the evidence in favor of defendant's claim of adverse possession. If there had been an agreed line fence, as defendant contends, the pictures clearly show that none had been in existence for an undetermined and long period of time. The pictures show an unused strip of ground extending across the property, which, according to testimony, was at least eight or ten feet wide, and which neither of the parties cultivated or used. Part of this strip, particularly at the west end, was grown up in wild brush. A few fence posts remain in the strip midway and toward the east. These could be the remnants of a line fence or of a temporary pasture fence as described by the plaintiffs.

If we assume that a line fence was once constructed as defendant contends and that it followed generally the line of brush shown to exist, this case is similar, factually, to the case of *Duncan* v. *Abell*, 340 Ill. 613. There, as here, the fence, assuming its initial existence, had been gone for a number of years and there had developed a growth of brush, estimated in that instance to be twelve feet or more in width, which was referred to as a fence row. There was some testimony there, as here, that the parties claiming by adverse possession had farmed "up to the fence line." However, it was observed in the opinion that the very existence of the growth along the fence row made that impossible and that the evidence did not disclose a situation in which there was in continuous existence, for the statutory period, a definite and unchanging line to which exact point cultivation, or some other active gesture of ownership, was uninterruptedly extended. Upon the facts presented in the *Duncan case* this court decided that title by adverse possession had not been established.

The law applicable to the facts of this case is not questioned or disputed. Adverse possession cannot be made out by inference or implication because the presumption is always in favor of the true owner of land and the proof to establish it must be clear, positive and unequivocal. To acquire title by adverse possession, the strictest kind of proof is required. (*Sottiaux* v. *Bean,* 408 Ill. 25; *Pullman Car and Manufacturing Corp.* v. *Stroh,* 349 Ill. 492.) To entitle the person urging the Statute of Limitations as a defense to ejectment, the evidence must show that the possession was hostile, actual, visible, notorious and exclusive and that it was continuous for twenty years or more, under claim of ownership and without any recognition of title in the true owner. (*Loverkamp* v. *Loverkamp,* 381 Ill. 467; *Town of Kaneville* v. *Meredith,* 351 Ill. 620; *Jones* v. *Scott,* 314 Ill. 118.) Applying the settled principles of law to the facts of this case it is impossible to find proof of the character required to sustain the judgment of adverse possession. We cannot say that the proof clearly and unequivocally shows actual, exclusive, hostile, visible, notorious and continuous possession of the entire disputed strip by defendant for the statutory period. The existence of the brush growth and uncultivated strip makes the fulfilment of these conditions and requirements impossible. And we also note that the testimony of the defendant and her witnesses does not clearly show actual, continuous and exclusive possession of the entire tract for the required time. We think the most that can reasonably be found from this record is that the defendant was using part of the strip during some of the time, but it is impossible to conclude from the record before us that there was any twenty-year period in which the defendant was in continuous, hostile, actual, visible, notorious and exclusive possession of the whole strip of land. Under all these circumstances the superior court of Cook County was not warranted in holding that the defendant had proved by the

clear, positive and unequivocal evidence, which the law requires, that she had acquired good title by limitation, and such holding was clearly and manifestly against the weight of the evidence.

That part of the judgment of the superior court of Cook County vesting title in the disputed strip of land in the defendant, Anna Bobzien, by virtue of adverse possession and the Limitations Act is reversed and the cause is remanded with directions to confirm title thereto in plaintiffs.

*Reversed and remanded, with directions.*