JOHN T. HARTZLER *et al.*, Plaintiffs-Appellees, *v.* HERBERT UFTRING *et al.*, Defendants-Appellants.

Fourth District No. 4—82—0633

Opinion filed May 9, 1983.

Presney, Huffman, Kelly & Appleton, of Springfield, and John B. Hus-chen, of Huschen & Huschen, of Roanoke, for appellants.

Leiken, Leiken & Leiken, of Eureka, for appellees.

JUSTICE MILLER delivered the opinion of the court:

FACTS

Plaintiffs, John and Donna Hartzler, filed a complaint in the circuit court of Woodford County seeking declaratory and injunctive relief against defendants, Herbert and Irene Uftring.

The parties dispute ownership of a strip of land five feet in width on the west edge of plaintiffs' property and the east edge of defendants' property. Plaintiffs' complaint sought a declaratory judgment that plaintiffs owned the disputed strip and a permanent injunction ordering defendants not to enter onto the strip. Defendants answered that the disputed strip was part of their property as a result of an implied agreement between the parties' predecessors in interest, or, in the alternative, that they had acquired the disputed strip by adverse possession.

The property owned by the parties had originally been part of a single tract of land owned by Clara Barth. Barth died in 1956 and her executor sold the property in two parcels on July 11, 1956. One parcel

was sold to Frank Oldenburg, defendants' predecessor in interest, and the other was sold to Robert and Inez Oldenburg, plaintiff's predecessor in interest. The deeds from Barth's executor to Frank and to Robert and Inez Oldenburg, identified the boundary between the two properties as a north-south line commencing at a point on the north line of Outlot 51 in the city of Minonk 194 feet east of the northwest corner of Outlot 51. The deeds of plaintiffs and defendants also identify this line as the boundary line between the two properties.

Defendants moved onto Frank Oldenburg's property as tenants in May 1963. Mr. Uftring testified that there was a fence about 35 or 40 feet east of the house and about 20 trees along the fence on either side of it. The edge of a concrete floor, all that remained of a chicken house, ran along the fence line. Mr. Uftring testified that since his family moved onto the property in 1963, they had mowed the grass up to the fence. Defendants acquired title to their property from Frank Oldenburg on October 4, 1972.

Plaintiffs acquired title to their parcel from Robert, Phyllis and Delores Oldenburg on April 17, 1975. Mr. Hartzler testified that when plaintiffs moved on to their property there were fence posts, but no fence, and trees along the west side of the property. Shortly after moving onto the property, Mr. Hartzler pulled up the fence posts and cut down trees along the fence line. As a result of these acts, heated arguments arose between the parties over the ownership of the trees. Mr. Hartzler had a survey made in 1975 which showed that the trees along the fence line were on plaintiffs' property and plaintiffs' boundary line was approximately five feet west of the fence line. Plaintiffs moved off the property in 1976 and rented it to two elderly women. However, the old dispute over the trees was renewed in 1979 when plaintiffs returned to their property and Mr. Hartzler continued spraying and trimming the remaining trees along the fence line.

The trial court found that plaintiffs established they had legal title to the land described in their deed and entered a declaratory judgment to that effect. The court also found that defendants failed to establish any of their affirmative defenses.

Opinion

I

Defendants first argue that the trial court erred in failing to recognize their defense based on the doctrine of the establishment of boundary lines by agreement.

■ Where a boundary line between two tracts is unascertained or

in dispute, the line may be established by parol agreement and possession or by an agreement implied from the unequivocal acts and declarations of the parties and acquiescence for a considerable period of time. (*McLeod v. Lambdin* (1961), 22 Ill. 2d 232, 174 N.E.2d 869; *Ginther v. Duginger* (1955), 6 Ill. 2d 474, 129 N.E.2d 147; *Jones v. Scott* (1924), 314 Ill. 118, 145 N.E. 378.) When an unascertained or disputed boundary is established by either of these methods it will be binding on the parties to the agreement and their privies in estate. (*McLeod.*) The boundary, once established, will control the parties' deeds notwithstanding the statute of frauds. (See *Ginther.*) The principle upon which this conclusion is reached is that the effect of the agreement is not to pass real estate from one party to another but simply to define the boundary line to which their respective deeds extend. (See *Ginther*; *Jones*; 11 C.J.S. *Boundaries* sec. 67, at 639 (1938).) The requirement that the boundary be unascertained or in dispute is therefore a necessary prerequisite to any agreement, since "[i]f the location of the true boundary line is known to the owners they cannot transfer the land from one to the other by an agreement changing such location." See *Jones v. Scott* (1924), 314 Ill. 118, 121, 145 N.E. 378, 380; see also *Loverkamp v. Loverkamp* (1942), 381 Ill. 467, 45 N.E.2d 871.

Defendants do not assert that there was a parol agreement to establish the boundary line, but maintain that an implied agreement existed which established the fence line as the boundary line. Obviously, there has been no implied agreement between the parties as to a boundary line. Since plaintiffs and defendants acquired their respective parcels from the Oldenburgs, with no intervening owners, and the parcels were part of a single tract prior to the Oldenburgs' ownership, defendants would have had to prove that Frank Oldenburg had agreed with Robert and Inez Oldenburg to establish an unascertained or disputed boundary line by their unequivocal acts and declarations and by their acquiescence for a long period of time.

■ The boundary line between the properties was described in the deeds in which Barth's executor conveyed the property to Frank Oldenburg and to Robert and Inez Oldenburg. The deeds clearly and consistently show the boundary line between the two properties to be a line running due south from a point on the north line of Outlot 51 194 feet east of the northwest corner of Outlot 51. There is no evidence whatsoever in the record that this line was ever in dispute or unascertained while the parties' property was owned by the Oldenburgs.

While we are aware of the statement in *Boyer v. Noirot* (1981), 97 Ill. App. 3d 636, 423 N.E.2d 274, that a dispute between the par-

ties litigating the location of the boundary line meets the dispute requirement of the doctrine of the establishment of boundary lines by agreement, we cannot abide by this interpretation. In *Jones*, the supreme court said, "There are but two conditions under which the rule in relation to establishment of boundary lines by agreement applies: One is where a line is in dispute, and the other is where it has not been ascertained. *In either case the agreement is for the purpose of establishing the disputed or unascertained line.*" (Emphasis added.) (*Jones v. Scott* (1924), 314 Ill. 118, 121, 145 N.E. 378, 380.) This language clearly requires that the dispute precede the agreement and that the purpose of the agreement be to resolve the dispute. (See also *Ginther*, wherein the supreme court stated, "where there is a dispute between adjoining land owners as to the true boundary line between their respective lands or if the line between them is unascertained, the agreement to establish a line, *when so in dispute or unascertained*, may be implied from the unequivocal acts and declarations of the parties, either expressed or implied." (Emphasis added.) (*Ginther v. Duginger* (1955), 6 Ill. 2d 474, 482, 129 N.E.2d 147, 151; *Loverkamp*.) Furthermore, if a current dispute between the parties in court would suffice to invoke the doctrine, it is superfluous to say that a dispute is a condition to the application of the doctrine since there will always be a dispute between parties litigating over the location of a boundary line.

Even if there had been evidence of a disputed or unascertained boundary line in the present case, the record is devoid of any evidence of an agreement between the parties' predecessors in interest to establish the fence line, or any other monument, as the boundary line between the two properties.

The only testimony regarding the period of time between 1956 and 1975 (the period of the Oldenburgs' ownership) was that of defendants' relating to the time subsequent to 1963 while defendants were living on Frank Oldenburg's property as tenants. Mr. Uftring testified that in 1963, there was a fence east of the house and there were trees along the fence on either side of it. There was no evidence explaining how or why the fence or the trees came to be where they were. Furthermore, the presence of the fence cannot be construed as evidence of an agreement between the Oldenburgs to establish the fence as the boundary line because the fence was apparently in existence before the land was divided and sold to the Oldenburgs. Defendants' witness Wayne Kettwich testified that the fence was in place when he lived on the property from 1951 until 1956 when Clara Barth's executor sold the property to the Oldenburgs. In *Cienki v.*

*Rusnak* (1947), 398 Ill. 77, 75 N.E.2d 372, the defendants argued that the parties' predecessors in interest had, by their unequivocal acts, established the boundary line at the end of a garage on plaintiff's property. The supreme court upheld the trial court's decision in favor of the plaintiff and stated, "the brick garage with a solid wall facing the south line of the disputed strip is utterly devoid of any implication of an agreement to fix a boundary line because the building was erected prior to the division of [the property] into two separate parcels." 398 Ill. 77, 88, 75 N.E.2d 372, 378.

The existence of an agreement is the distinguishing factor between the present case and the two cases on which defendants rely most heavily, *McLeod* and *Boyer*. In both *McLeod* and *Boyer* the court specifically found that the conduct and acquiescence for many years of the adjacent landowners was evidence of an implied agreement to establish a boundary line between the respective properties.

We conclude that the trial court did not err in finding that the defendants failed to prove an implied agreement to establish the fence line as the boundary line between the parties' properties.

## II

■ Defendants also maintain that they had acquired the property up to the fence line by adverse possession. In *Joiner v. Janssen* (1981), 85 Ill. 2d 74, 81, 421 N.E.2d 170, 174, the supreme court stated:

> "What is essential in order to establish title under the 20-year adverse-possession doctrine incorporated in section 1 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 1) is that there must be 20 years' concurrent existence of the five elements: (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious, and exclusive possession of the premises, (5) under claim of title inconsistent with that of the true owner."

Presuming that defendants had exclusive possession of the disputed strip when they acquired title to their property in October 1972, their exclusive possession ended in May 1975 when plaintiffs, the legal title holders, exercised their rights of ownership over the land in the disputed strip. (See *Towle v. Quante* (1910), 246 Ill. 568, 576, 92 N.E. 967, 970, wherein the supreme court stated, "A joint possession by two, even though the claim of each is adverse to the other, will not be a disseizin of one by the other. Where two are in possession the seizin follows the title, and there can be no disseizin unless the rightful owner is altogether deprived of possession.") Consequently, defendants would have had to prove that the 20-year period

began no later than May 1955. Since the parties' properties had been part of a single tract of land owned by Clara Barth until July 11, 1956, defendants could not have established exclusive possession for 20 years.

Furthermore, even if defendants could show their own exclusive possession up to the filing of plaintiffs' complaint, they still would have had to "tack" their claim to Frank Oldenburg's in order to prove 20 years' adverse possession. However, there is little, if any, evidence in the record to show that Frank Oldenburg possessed the property in dispute adversely to the interests of Robert and Inez Oldenburg. Consequently, we find that defendants failed to establish such possession by clear and unequivocal evidence.

The judgment of the trial court is affirmed.

Affirmed.

WEBBER, P.J., and TRAPP, J., concur.